(Decided April 1st, 1898).

---

CAROLINE H. STANLEY et al. *vs.* SAFE DEPOSIT AND TRUST COMPANY, Executor of JOSEPH COX.

*Wills—Where to be Probated—Jurisdiction of Orphans' Court to Determine Residence of Testator—When Question as to Residence Must be Raised—Appeal.*

An order of the Orphans' Court passed in pursuance of its statutory jurisdiction is valid until reversed on appeal or set aside by its own order, although it should be made to appear that the order was not warranted by the facts of the case.

Code, Art. 93, sec. 326, provides that a decedent's will must be probated in the Orphans' Court of the county where he resided, etc. *Held,* that when a will is offered for probate in a certain county the Orphans' Court has jurisdiction to determine and must determine whether decedent was a resident of that county or not. When this question is decided by the admission of the will to probate and the grant of letters testamentary, without any issues being asked for to contest the question of residence, or any appeal taken from the order, such adjudication is conclusive upon the question of residence and it is too late, after the settlement of an account in that Court by the executors, to file a petition alleging that the decedent was not a resident of that county and asking that issues be sent to a Court of Law to determine the question of residence.

The Court of Appeals must deal with cases as they are presented by the record, and it has no power, while reviewing the particular order from which an appeal was taken, to receive evidence or to remand the record for the Court below to hear testimony on a different question that in no way concerns the only issue brought before the Court of Appeals for review.

Appeal from an order of the Orphans' Court of Baltimore County.

The cause was argued before McSherry, C. J., Bryan, Fowler, Briscoe, Page, Boyd and Pearce, JJ. (Feb. 15, 16, 1898.)

*Thomas R. Clendinen* and *James H. Preston* (with whom were *Charles H. Stanley* and *John Gill, Jr.*, on the brief), for the appellants.

*Arthur W. Machen* and *Bernard Carter* (with whom was *D. G. McIntosh* on the brief), for the appellee.

McSherry, C. J., delivered the opinion of the Court.

This is an appeal from the Orphans' Court of Baltimore County, and it brings up for review the propriety of an order refusing to transmit to the Circuit Court for trial a proposed issue of fact. Joseph Cox wrote with his own hand and then, on the thirteenth day of November, eighteen hundred and ninety-six, executed in due form, his last will and testament. On the fourteenth day of December following he died. The Safe Deposit and Trust Company of Baltimore was named in the will as the executor. On the twenty-second of December the executor propounded the paper for probate in the Orphans' Court of Baltimore County—the testator in the will itself having declared that he was, at the time of its execution, a resident of that county, though he died in the city. The will was admitted to probate and letters testamentary were granted. Notice to creditors was at once given ; inventories were filed, and after the lapse of six months, the period fixed by the statute, a first and final administration account was stated on July the seventh, eighteen hundred and ninety-seven. In that account the executor was charged with the entire personal estate, and was allowed credit for the expenses and debts and pecuniary legacies, altogether aggregating thirty-seven thousand four hundred and forty-five dollars and

eighty-three cents, which were paid ; and the residue of ninety-four thousand nine hundred dollars and ninety-four cents, less the collateral inheritance tax, was turned over to the Safe Deposit and Trust Company to be held by it in trust under the provisions of the will.   On August the third, or nearly a month after the estate had been fully and finally settled according to the provisions of the will and the requirements of the statute, the appellants, claiming to be next of kin of the testator, filed in the Orphans' Court of Baltimore County a petition in which, after alluding to the probate of the will, they alleged that at· the time the will was executed Cox was not of sound and disposing mind ; that the instrument had been procured by undue influence and by fraud; that Cox had not, in fact, been a resident of Baltimore County, and that the probate of the will in Baltimore County was improper.   The petition then prayed that issues might be framed to present these allegations for trial in a Court of Law.   The executor answered neither admitting nor denying that the petitioners were next of kin of the testator, but flatly contradicting the averments as to mental incapacity, undue influence, fraud and non-residence.   On October the twenty-sixth the appellants filed a second petition asking that preliminary issues involving the inquiries as to whether Cox, at the time of his death, resided in Baltimore City or Baltimore County, and as to whether the appellants were his next of kin, might be transmitted to a Court of Law for trial.   On November the sixteenth the executor filed a supplemental answer admitting that the appellants *were* the decedent's next of kin ; and on the same day an additional answer was put in, resisting on various grounds the granting of the proposed issue as to non-residence.   In November the Orphans' Court dismissed the petition of October the twenty-sixth, which prayed for the transmission of the preliminary issues just above indicated.   From that order the pending appeal was taken.

The single question thus presented is, whether, under the

circumstances stated, the order which refused to grant an issue respecting the residence of Mr. Cox at the time of his decease, was correct.    And this is the sole question, because the petition of October the twenty-sixth, which was the only one dismissed by the order appealed from, propounded no other issues than the two of non-residence and relationship, and the executor's admission that the appellants are the testator's next of kin has eliminated the latter from the controversy.

It is undoubtedly true that the Orphans' Courts are tribunals of special, limited jurisdiction.    They have no powers other than those conferred by statute and such in addition as are incident to and necessary for the performance of the ones expressly given.    But there can be no question that to them is committed exclusively the authority to admit wills to probate and to grant letters testamentary, and in cases of intestacy, letters of administration. This authority is, whilst exclusive, itself also limited.    There are circumstances which restrict its exercise to prescribed localities.    If the circumstances which give rise to the jurisdiction do not exist in a particular case the authority to act does not arise.    But who is primarily to determine whether those circumstances do exist?    The Code fixes the place where a decedent's will must be probated, by prescribing that it may be proved in the county wherein letters testamentary or of administration may be granted ; and if such letters may be granted in Baltimore City, then probate may be had in the Orphans' Court of the city.    By sec. 14 of Art. 93 of the Code it is enacted that in cases of intestacy letters of administration may be granted by the Orphans' Court of the county wherein the deceased's mansion house or residence was situated, or, if he had no mansion house or residence, then letters may be granted in the county where he died.    It is apparent, then, if Cox had no mansion house or residence in Baltimore County, and if he died in Baltimore City, that the Orphans' Court of Baltimore City alone had authority to admit his will to probate ;

and it is equally manifest that if he was, at the time of his death, a resident of Baltimore County, though he died in the city, the Orphans' Court of the county was the proper tribunal to take probate of his will. Now, it is obvious that when the will, wherein the testator declared himself to be a resident of Baltimore County, was presented to the Orphans' Court of that county, for probate, *that* Court was required to decide and determine whether it had jurisdiction to admit the will to probate, and therefore, at the threshold, had power to decide and determine whether Mr. Cox had been, in fact, at the time of his death, a resident of the county. This was an inquiry which it was necessary for the Orphans' Court to make and to decide before it could proceed either to admit the will to probate or to grant letters of administration. The question as to *where* the decedent had his residence at the time of his death was essentially within the Orphans' Court's jurisdiction to decide when the will was propounded, unless there had *then* been framed for trial in the Circuit Court an issue presenting that inquiry for the finding of a jury. Necessarily and incontestibly, as the right to admit the will to probate depends, in such a case as this, upon the residence of the testator at the time of his death, the jurisdiction to decide *where* that residence was, is involved in, and is an inseparable part of, the power to grant the probate. In determining whether the will should be admitted to probate at at all the Orphans' Court was compelled itself to decide the question of the decedent's residence, as no such issue of fact, for trial by a jury, had then been proposed ; and the Court must have decided that such residence had been in Baltimore County, because in no other way could the Court have adjudged that this will was entitled to be admitted to probate in *that* county. This decision may be right or it may be wrong on the facts that were in evidence before the Court; but the question is, not whether the Court *rightly* decided, but whether it had a right *to decide* what it did decide. If it had a right to decide the question of resi-

dence, then it had the right to determine whether it had jurisdiction to admit the will to probate, and if it decided that preliminary question erroneously its decision was subject to review on appeal or to reversal by the Court itself upon proper application made to it for that purpose in due season. *Raborg* v. *Hammond*, 2 Har. & G. 48 ; *Schultz* v. *Houck, &c.*, 29 Md. 26. The evidence upon which it based its decision could not be looked to by this Court (even if it were in the record) to determine whether the Orphans' Court correctly decided the question of residence, except upon an appeal from that decision, and there is no such appeal before us. The subject being within the Court's jurisdiction all acts done as consequences of and pursuant to its decision on a matter of fact that gave it the right to exercise that jurisdiction, are valid until reversed on appeal or set aside by its own order, even though it should subsequently appear that the conclusion reached on that matter of fact was not actually warranted. *Wilson, Admr.*, v. *Ireland*, 4 Md. 448.

The issue raising the question of residence is purely a preliminary inquiry in no way involving the validity of the testator's will, and in no way affecting the distribution of his estate. There is no reason for requiring that administration shall be taken out in the county where the decedent had his residence other than because the statute so prescribes. In so prescribing it enacts that the place of residence shall be the place where administration of the estate shall be begun and completed. If, however, the Orphans' Court, in the exercise of its jurisdiction to determine *where* that place of residence was, makes an erroneous decision which is not appealed from, and the executor, acting in reliance on that decision and in strict compliance with the statute, proceeds to finally settle the estate by paying the debts and legacies and by turning over the assets to the residuary legatee, there is no reason for thereafter reopening the question of residence and readjudicating it, unless it be merely to strike down all that had been done and to trans-

fer the estate to the Orphans' Court of some other county
for settlement there in precisely the same way that it had
previously been adjusted and settled. When the estate has
been finally and fully settled there is nothing further to set-
tle, so long as the will continues operative, no matter *where*
it may have been settled ; and there is no different mode of
settling it, no matter *where* it may be proposed to adminis-
ter it. Having been settled strictly in conformity to the
provisions of the will and in the place where a Court having
jurisdiction to determine that subject has decided that it
ought to be settled ; the mere accidental circumstance that
this determination was wrong, furnishes in the absence of an
averment and proof of fraud, no good cause for the Court
revoking all that had been done in reliance on its prior ad-
judication, merely to enable the same thing to be done in
the same way by the same executor in some other tribunal.
The refusal to submit the question of residence to a jury
deprived the next of kin of no right which they had, and
still have to contest the validity of the will ; and in no pos-
sible way interferred with the trial of the other issues upon
the merits. If the will is valid it can make no possible
difference to the appellants whether it was improvidently
admitted to probate in Baltimore County or not; and if it is
invalid, then the probate will ultimately be stricken out,
not because it was improvidently taken in Baltimore County,
but because there being no will in fact, there was none to ad-
mit to probate anywhere. The application to strike out the
probate was not based on a failure of the Orphans' Court to
comply with the provisions of sec. 329, Art. 93 of the Code,
in admitting the will to probate. That section requires
notice to be given to the near relations of the deceased be-
fore a probate can be taken, if none of those relations are
present when the will is propounded to the Orphans' Court.
The application to strike out the probate is founded on
other grounds ; and, so far as the case is now before us, it
is sought to vacate that probate solely to enable the ques-
tion of disputed residence to be sent to a jury for trial

The construction and effect of sec. 329 are consequently not involved in any manner. It will be time enough to determine whether the provisions of that section were complied with when the probate is assailed on the ground that they were not observed. In the petition there is no averment that the requirements of the statute were disregarded, and there is no prayer asking that the probate be set aside because of a failure to observe them—the sole issue involved being the one relating to residence.

The case of *Emmert* v. *Stouffer*, 64 Md. 550, so much relied on by the appellants, decides nothing at all in conflict with the views we have expressed in this opinion. That case arose in this way : Eliza Stouffer had, in her lifetime, executed a paper purporting to be a last will and testament. By it she devised to her executors, who were her two sons, all her real estate to be sold. The interest on one-half of the proceeds she gave to one son during his life, and at his death the principal was directed to be divided amongst his children. The interest on the other half she gave to the other son for life and at his death the fund was required to be distributed to his children. The executors produced this paper in the Orphans' Court, and at the same time filed a petition asking for letters of administration and alleging that the will was invalid because of the want of mental capacity in the testatrix. The Orphans' Court having heard evidence, decided that the paper was not the last will and testament of Eliza Stouffer and therefore granted letters of administration as in case of intestacy. Thereafter the two sons, as heirs at law, sold to Emmert the real estate which had been devised by the alleged will ; but when the purchaser discovered the existence of the paper purporting to be a will, he declined to comply with the terms of the sale. The vendors then filed a bill for specific performance, and, upon appeal, this Court held that the purchaser was not obliged to take the property because the action of the Orphans' Court in declaring against the validity of the will was void, and was void for the reason that the paper not

having in fact been propounded for probate, probate could not have been legally denied. That is to say, that because the parties producing the paper had not asked the Court to admit that paper to probate as a valid will, it was not before the Orphans' Court for probate at all, and the order rejecting it was wholly without effect upon the paper, and therefore that probate of it might be had at any time; and in the event that it was subsequently probated Emmert would get no title. These were the facts with which the Court was then dealing and it was with reference to them that the language used in the opinion was employed; and it is obvious, at a glance, that a very different question was thus presented and decided, from the one now involved. The order refusing probate was declared null and void because the Orphans' Court assumed jurisdiction to pass on the validity of the alleged will when in point of fact the will had not been propounded for probate at all. Not having been propounded for probate it was not before the Court, and not being before the Court, obviously the Court had no jurisdiction to pass any order respecting its validity. But in the case at bar it became necessary for the Orphans' Court to decide the question of the decedent's residence solely for the purpose of determining *where* the will should be probated, and this in no way affected any rights of the legatees or the next of kin. Having decided the question of residence, as the Court must have done before the will could have been admitted to probate, whether that decision be right or wrong, it is final because no appeal was taken from it and because the Orphans' Court has refused to review it. The *validity* of the will is not involved in this proposed issue, and the refusal to grant the issue in no way precludes an inquiry into its alleged invalidity.

Since the argument of this case in this Court the appellants have filed a petition here alleging that no proof had been adduced before the Orphans' Court as to the residence of Mr. Cox; and that no notice had been given under sec. 329 of the Code warning the near relations that the will

would be propounded for probate ; and the petition prays that the Court of Appeals may suspend the determination of the case until proof can be adduced either in this Court or in the Court below in support of the averments of the petition. This is a very unusual request and one that we manifestly have no authority to grant. In effect the petition asks leave to make out a new and a totally different case. It sets up matters not at all relevant to the propriety of the order refusing to grant an issue on the question of residence, and it asks that the probate be stricken out upon grounds with which that proposed issue has no connection or concern whatever. We must deal with cases as they are brought before us by the record transmitted from the Court below, and we have no power, whilst reviewing a particular order from which an appeal has been taken, to receive evidence or to remand the record for the Court below to hear testimony on totally different questions that in no way reflect on the only issue brought to this Court for review. This petition must consequently be dismissed.

For the reasons we have assigned the order appealed from will be affirmed.

*Order affirmed with costs above and
below.*

(Decided April 1st, 1898).