ARCHIBALD H. TAYLOR, Admr. of the Estate of JOHN SCOTT, JR. *vs.* DAVID H. CARROLL and ETHELBERT E. SHIPLEY, &c.

*Power of Sale in Mortgage—Who May Exercise—Foreclosure of Mortgage—Laches in Enforcement of Mortgage—Adverse Possession.*

When a mortgage has been assigned to a party for the purpose of foreclosure only, the power of sale therein contained cannot be exercised by the administrator of such assignee, unless specially designated.

A part of a tract of land, the whole of which was subject to a mortgage,

was conveyed to plaintiff in June, 1877; the mortgage, which was executed in 1873, being then overdue. In September, 1877, some of the land, not including that conveyed to plaintiff, was sold under the mortgage, but did not satisfy the entire mortgage debt. Plaintiff remained in adverse possession of the land conveyed to him without any recognition of the mortgage for more than twenty years, during which time the mortgagee instituted no proceedings for foreclosure. In October, 1897, the assignee of the mortgagee advertised plaintiff's property for sale under the mortgage. Upon a bill for an injunction, *Held*, that the unexplained delay for more than twenty years to prosecute the foreclosure is such laches as bars the mortgagee from enforcing the mortgage against plaintiff.

A purchaser of property is not affected with notice of a pending suit relating to it, unless the suit has been prosecuted with reasonable diligence.

Appeal from a decree of the Circuit Court of Baltimore City (WICKES, J.), by which it was adjudged that the mortgage mentioned in the proceedings in this case does not constitute a lien or charge on the four lots of land owned by the plaintiffs and fronting on Mt. Vernon street, in the city of Baltimore, and that the defendant and his agents be perpetually enjoined from setting up or attempting to enforce said mortgage against the said four lots of land or from interfering with the enjoyment thereof of the plaintiffs, or those claiming under them.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE and PEARCE, JJ.

*Archibald H. Taylor* and *E. P. Keech, Jr.*, for the appellant.

*George Whitelock* (with whom was *Thomas H. Ridgely* on the brief), for the appellees.

BRISCOE, J., delivered the opinion of the Court.

On February 3rd, 1873, Spotswood Garland, of Baltimore County, conveyed by way of mortgage to Douglas H. Gordon, of that county, to secure a loan of twenty thousand dollars, certain lands situate in Hampden, at that time Baltimore County, but, since the Act of 1888, ch. 98, a part of Baltimore City, including the four lots in controversy in this case.

On the 28th of July, 1877, Gordon, the mortgagee, for the purposes of foreclosure, assigned this mortgage to John Scott, Jr., a member of the Baltimore bar, who, subsequently, on September 11th, 1877, under the power contained in the mortgage, sold a large part of the mortgaged land, not including these lots in dispute, for the sum of $2,100; the sale was ratified by the Court, and afterwards, on the 20th of March, 1878, an auditor's account was filed therein showing a balance of indebtedness of $7,691.01, with interest from the 5th of September, 1877, after allowing credit for the money arising from the sale. This audit and account was ratified by the Court on the 17th of May, 1878.

John Scott, Jr., is dead, and Archibald H. Taylor, the appellant, was, on the 28th of October, 1897, appointed administrator of the estate, who, upon an order of the Circuit Court of Baltimore County, substituting him as party plaintiff, proceeded as such administrator to advertise and sell the mortgaged land, including these four lots. It further appears that David Carroll, the testator of the appellees, prior to June 20th, 1877, acquired title to both the leasehold and reversionary interests in the four lots described in the mortgage and under his will they passed to the appellees.

This bill is filed by the appellees to restrain the sale and to declare that this mortgage does not constitute a lien or charge on these lots, and from a decree in favor of the appellees this appeal has been taken.

The first question, then, presented by this state of facts relates to the right of the appellant to exercise the power of sale conferred by the mortgage. The appellant admits by his answer to the bill, that the mortgage was assigned to John Scott, Jr., for the purpose of foreclosure only, and whether this assignment vested such title in Scott as would pass upon his death to his administrator, is the question here.

The general proposition is true that the power of sale contained in a mortgage passes with the estate by assign-

ment of the mortgage debt and is not affected by the death of the mortgagee, because it is a power coupled with an interest, and is appendant to the estate.  *Berry* v. *Skinner*, 30 Md. 572 ; *Mackubin* v. *Boarman*, 54 Md. 387.   But it is distinctly held that where the power is conferred upon a third person, who has no interest in the estate, it is a collateral power.   In *Queen City Perp. Bldg. Association* v. *Price*, 53 Md. 398, this Court said : If any person than the mortgagee or his assigns be intended by the parties to execute the power he or they must be specially named in the power. In *Chilton* v. *Brooks*, 71 Md. 450, it was said that the assignee of a mortgage, whoever he may be (if not a corporation), may execute the power as if designated by name, while an attorney may do it only when specially named.

And in *Barrick* v. *Horner*, 78 Md. 256, where the earlier cases on this subject are cited and reviewed, it is said: " It is clear, that the right to execute the power cannot vest in his executors, unless they are designated by the instrument in such terms as to bring them within the provisions of the statute.   *   *   An assignee of the mortgage in a case where the power was effectively conferred upon the mortgagee would take the right to execute the power, as an incident of the estate, but where a stranger is the donee, the power not being appurtenant to the estate, can be exercised by him only who has had it conferred according to a proper construction of the statute, that is, by having been specially named in the mortgage. "   In that case, it was said that the executors of Horner not being specially named, are without authority to execute the power.

In view of these analogous authorities there can be no question, it seems to us, that Mr. Scott only acquired a special title for purposes of foreclosure only by the assignment of the mortgage in this case, and, as he took no beneficial interest or property in the mortgage, none could vest in or devolve upon his administrator.

But there is another reason, apart from the one just stated, why the decree of the Circuit Court should be

affirmed.    It will be seen that on the 10th of August,
1877, Scott began proceedings as assignee, under the mort-
gage, in the Circuit Court of Baltimore County, and nothing
further was done, looking to a sale of this property, until
October 29th, 1897.    The deeds to the appellees' testator
were executed prior to June 20th, 1877, and for more than
twenty years the appellees and their devisor remained in
adverse possession of, and have exercised ownership over,
these lots.    There is no evidence of part payment or admis-
sion of an existing debt, nor recognition in any manner of
the mortgage debt, nor any other circumstance from which
it can be inferred that the debt has not been paid.

It is insisted, however, that the mortgage proceedings
instituted by Scott in 1877, is a *lis pendens*, and "that no
title by adversary possession, or limitations, could be gained
by any one claiming under the parties to that suit."

Whether the proceedings in the Circuit Court for Balti-
more County was at the time, a *lis pendens*, or not, we do
not find it necessary for the purposes of this case to decide,
because it is clear that in order "to constitute *litis penden-
tia*, there must be a continuance of *litis contestatio*."    The
long and unexplained delay in the prosecution of the suit,
we think, amounts to laches.    Mr. Pomeroy in his work
on *Equity Jurisprudence*, page 634, thus lays down the
rule :    " In order, however, that a purchaser *pendente lite*
may be thus affected, the suit must be prosecuted in good
faith with all reasonable diligence and without unnecessary
delay.    A neglect to comply with this requisite would
relieve a purchaser from the effect of the *lis pendens*, as
notice."

In *Johnston* v. *Standard Mining Co.*, 148 U. S. 370, the
Court said that " the mere institution of a suit does not of
itself relieve a person from the charge of laches, and that if
he fail in the diligent prosecution of the action the conse-
quences are the same as though no action had been begun."
In the recent case of *Demuth* v. *Old Town Bank*, 85 Md.
326, we said: " Laches is such neglect or omission to assert

a right, as taken in conjunction with lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a Court of Equity. * * * There must be a legal duty to do some act, a failure to do that duty and attendant circumstances which cause prejudice to an adverse party before the doctrine can be successfully invoked." And in *Preston* v. *Horwitz*, 85 Md. 164, this Court repeated the general rule, that the policy of the law is to give quiet and repose to titles and Courts of Justice ought not to countenance laches or long delays on the part of claimants.

In the case now before us, there was nothing done " to keep the suit alive and in activity," from the 20th of October, 1877, the date of the ratification of the sale made by Scott, until October 29th, 1897, when the appellant was substituted as plaintiff. Nor does the record disclose any circumstance from which a satisfactory excuse or explanation can be given for the long delay in prosecuting this suit. And this being so, the facts and circumstances of the case bring it within the application of the well-settled rule as to laches.

For these reasons the decree will be affirmed.

*Decree affirmed.*

(Decided March 14th, 1899).