JANE B. BRADLEY *vs.* GEORGE C. BRADLEY,
MARTHA H. ANDERSON, JAMES S. DAVID-
SON AND JOHN C. DAVIDSON.

*Wills* : *probate; jurisdiction of Orphans' Courts exclusive;*
*equity no right of review. Equitable defences.*

The jurisdiction to take probate of wills conferred by the pro-
visions of the code upon the Orphans' Courts is an exclusive
jurisdiction, and a court of equity has no power to determine
whether or not a will shall be admitted to probate, or to
revoke an order of the Orphans' Court admitting a will to
probate.                                                      p. 521

Where a will is admitted to probate, and letters testamentary
granted by the Orphans' Court before a caveat was filed, such
action of the Orphans' Court can not be reviewed or revoked
by a court of equity.                                         p. 521

The rule which authorizes the issuing of an injunction to stay
an action at law where the defendant has a purely equitable
defence which a court of law can not recognize and enforce,
assumes that the equitable questions contained in the defence
extends to the entire cause, so that their decision determines
the entire controversy.                                       p. 522

A bill for an injunction was filed by the widow of a testator
to enjoin a caveat to a will, which caveat alleged that the
testator was not of a sound and disposing mind, etc., and
that the execution of the will had been procured by undue
influence; the bill alleged that the will had been in pursuance
of an antenuptial agreement with the petitioner that had been
fully performed by her, and that such performance was in
equity a bar to any proceeding to set aside the will, and that
she would be unable to assert her rights thereunder in the
Orphans' Court. *Held,* that the charge that the alleged will
was procured by undue influence, etc., was not sufficiently met

by the equitable grounds upon which the application for the
injunction was based.　　　　　　　　　　　　　　　　　p. 522

*Designatio, unius, exclusio est alterius.*　　　　　　　　p. 520

*Decided February 28th, 1912.*

Appeal from the Circuit Court of Montgomery County,
sitting in equity (URNER and MOTTER, JJ.).

The cause was argued before BOYD, C. J., PEARCE,
BURKE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*Charles W. Prettyman* and *William L. Marbury* (with
whom were *Talbott & Prettyman* and *Bouic & Bouic* on the
brief), for the appellants.

*Daniel W. Baker* (with whom was *Frank J. Hogan* on the
brief), for the appellees.

THOMAS, J., delivered the opinion of the Court.

The appeal in this case is from a decree of the Circuit
Court for Montgomery County, sustaining a demurrer to
and dismissing the bill of complaint of the appellant.

Henry Bradley, of Montgomery county, Maryland, died in
January, 1911, leaving a large real and personal estate and
a last will and testament and codicil, executed September
14th, 1904, and September 15th, 1910, by which he gave all
his property and estate to his wife, the appellant, and
appointed her executrix.

The will with the codicil was admitted to probate in the
Orphans' Court of said county on the 7th of February,
1911, and letters testamentary were granted to the appellant
who took possession of the estate.

In June, 1911, the appellees, a brother, sister and two
nephews of the deceased, filed in the Orphans' Court a caveat
to said will, alleging, among other things, that the deceased,
at the time of the execution of the will, was not of sound

and disposing mind, etc. Thereupon the appellant brought this suit for the purpose of enjoining the prosecution of the caveat, and basing her right to the relief sought on the ground that the will was made in pursuance of an ante-nuptial agreement that has been fully performed by her, and that, therefore, even if the deceased was of unsound mind at the time of the execution of the will, performance of the contract by her is, in equity, a bar to any proceeding to set aside the will.

The bill avers that in 1904 the appellant was solicited by the deceased to become his wife; that his solicitations continued through a number of months, and finally became so urgent that she "tentatively consented to marry him," but no day was fixed for the marriage; that "in furtherance of his desire to marry" her, the deceased executed a paper "in the nature of an ante-nuptial agreement by which he agreed and promised that in the event of such marriage taking place," the appellant "should have in lieu of other interests in his property growing out of said marriage, the sum of thirty thousand dollars" and the house and lot described in the agreement, a certified copy of which was filed with the bill; that on the fourteenth day of September, 1904, the deceased came to the residence of the appellant aand exhibited to her said agreement and also a paper purporting to be his last will and testament, duly executed by him, by which he devised and bequeathed to her all his property and estate, "conditioned upon a marriage taking place between them; that being so induced by the provisions made for her by said agreement and said will she thereupon agreed to marry him," and that she and the deceased were duly married that day, and continued to live as husband and wife until his death in January, 1911; that the agreement and will were delivered to her prior to the marriage, and that the agreement was afterwards recorded, and the will, from March, 1905, remained in her possession until it was filed in the Orphans' Court except for a few days, when, at the request

of the deceased, it was delivered to him in order that he might consult his attorney as to the proper way to confirm it, and was returned to her with the codicil annexed.

The bill further avers that the appellant and the deceased, on the fourteenth of September, 1904, "entered into a binding contract and agreement by which she on her part was to marry the" deceased, "and in that event he on his part was to deliver to her the said ante-nuptial settlement and to leave unrevoked and in full force and effect the said last will and testament duly executed on the same day, but prior to the hour of said marriage; that said contract on her part has been duly executed and performed by the marriage aforesaid, and that the contract and agreement entered into by the said Henry Bradley—has been executed and performed by the delivery and recording of the ante-nuptial contract and by the execution and delivery of the said last will and testament, and the death of "the deceased" leaving said last will and testament unrevoked," etc.

After alleging the filing of the caveat, the bill then charges that the institution of the proceedings in the Orphans' Court is an attempt to commit a fraud upon the rights of the appellant because the property devised and bequeathed to her was not a gift of the deceased by will, but was the performance by him of "a solemn and binding contract and agreement made and entered with "the appellant" in consideration of her marriage with him, which contract and agreement she on her part has fully performed;" that the Orphans' Court is without jurisdiction to determine the rights of the parties under said contract, and that she would not be able to assert her rights thereunder in said Court; that it would be a fraud upon her to allow the proceedings under the caveat to continue, as she would thereby be deprived of the means of defending her rights, and be subjected to irreparable loss, etc.

By the ante-nuptial agreement referred to, which is dated the 20th of May, 1904, was acknowledged August 18th,

1904, and recorded March 14th, 1905, the deceased, in consideration of the promise of the appellant to marry him, conveyed to her a house and lot in Rockville, Maryland, and covenanted to pay to her thirty thousand dollars. The will is dated September 14th, 1904, and declares that it is irrevocable, and that it was made on condition that the appellant married the testator. The codicil, which was executed September 15th, 1910, refers to the provisions of the agreement and of the will and then ratifies and confirms them.

The petition or caveat of the appellees, a copy of which was filed with the bill, charges that the deceased was not capable of executing a valid will; "That neither said alleged will nor the said alleged codicil offered for probate constitutes the last will and testament" of the deceased, and that the same were procured by the undue influence of the appellant, and prays that the order admitting them to probate be revoked, and that issues be framed and sent to a Court of law for trial.

It is apparent from this statement of the case as presented by the bill, that the real question in the case is whether a Court of equity will enjoin the prosecution of a caveat on the ground that there is an equitable defense or answer to *one* of the charges against the will. Assuming, without deciding, that the bill makes out such a valid and binding obligation on the part of the deceased to devise and bequeath all his property to the appellant as a Court of equity can enforce; that the averment that she fully performed her part of the contract is a sufficient answer to the charge that the deceased, at the time he made the alleged will, was of unsound mind, and that that defense can not be availed of by the appellant in the Orphans' Court, it still does not follow that a Court of equity would be justified in enjoining the further prosecution of said proceedings.

Section 316 of Article 93 of the Code provides that "No will, testament or codicil shall be good and effectual for any purpose whatsoever, unless the person making the same be at the time of executing or acknowledging it as hereafter di-

rected, of sound and disposing mind, and capable of executing a valid deed or contract," and section 317 provides how a will shall be executed. Section 331 authorizes the "orphans' Courts, and in their recess, the registers of wills in this State, "to take the probate of wills, and sections 336, 337, 338, 339, 341 and 342 provide how and when proof of wills shall be taken, clothe the Orphans' Courts with power and authority to decide all objections to wills and codicils, and declare that when the Orphans' Court decides against the probate of a will it shall not be received for probate in any other county, unless that decision be reversed on appeal.

It is said in 16 *Cyc.* 100: "While the original jurisdiction of equity over the administration of estates, where uninterfered with, has always been very extensive, nevertheless there are some matters which have always fallen within the exclusive jurisdicition of the common-law or ecclesiastical (probate) Courts. Thus a Court of equity in the absence of statute has no jurisdiction to admit a will to probate; nor can it avoid a will or set aside the probate thereof even on the ground of fraud, mistake, or forgery. Such jurisdiction is vested exclusively in the probate Courts." In the case of *Simmons* v. *Saul*, 138 U. S. 439, Mr. JUSTICE LAMAR quotes the statement of Mr. JUSTICE BRADLEY, in the case of *Brodericks Will*, 21 Wall. 503: "That a Court of equity will not entertain jurisdiction to set aside the probate of a will, on the ground of fraud, mistake or forgery, this being within the exclusive jurisdiction of the probate Court." In the case of *Johns* v. *Hodges*, 62 Md. 525, JUDGE IRVING, referring to the Orphans' Court, says: "The creation of a Court for a particular purpose, and the clothing it with all the powers necessary to its jurisdiction over the subject and the parties interested, without giving concurrent jurisdiction to any other tribunal, by the familiar maxim, *'designatio unius, exclusio est alterius,'* would seem to exclude the jurisdiction of any other than the one specially authorized. JUDGE STORY, in *Tompkins* v. *Tompkins*, 1 Story, 547-554, in discussing the like question arising under the law of

Rhode Island, says, the giving of jurisdiction to a tribunal to take the probate of will, notwithstanding no exclusive words were used in the statute, operated to make the jurisdiction of the authorized tribunal exclusive and its decisions conclusive on the question. Such decisions, he says, are of like nature with proceedings *in rem,* 'and necessarily conclusive of the matter in controversy for the common safety and repose of mankind.' The law of Massachusetts contains no exclusive words, yet the jurisdiction of Courts of probate is held to be exclusive. *Ib.* 554, and *Osgood* v. *Breed,* 12 Mass. 525. In 2 *Greenl. Ev.,* sec. 672, it is said that this is the generally accepted law in those States of the Union where Courts of probate are established. See also 2 *Pomeroy's Equity,* sec. 913, and *Anderson* v. *Appleton,* 112 N. Y. 104, 19 N. E. 427, 2 L. R. A. 175.

We think it clear that the jurisdiction to take probate of wills conferred by the provisions of the Code upon the Orphans' Courts of this State is an exclusive jurisdiction, and that a Court of equity has no power to determine whether a will shall be admitted to probate, or to revoke an order of the Orphans' Court admitting a will to probate.

In this case the will in question was admitted to probate and letters testamentary were granted by the Orphans' Court before the caveat was filed, and such action of the Orphans' Court can not be reviewed or revoked by a Court of equity. *McDaniel* v. *McDaniel,* 86 Md. 625; *Stanley* v. *Safe Deposit Co.,* 87 Md. 450.

The Code confers upon the Orphans' Courts ample authority to hear and determine caveats filed after a will has been admitted to probate, and to revoke letters previously granted, and the Orphans' Court of Montgomery County is clothed by statute with full power to determine the questions raised by the petition of the appellees and to grant the relief prayed by them. Even if it be conceded that the averment of the bill, that the appellant performed the contract relied on, is a complete defense to the objection, that the deceased was not capable of making a will, and that where that is the

only objection to a will a Court of equity should intervene in order to give effect to such a defense, in the case at bar there are *other* charges against the will to which the defense relied on is not a sufficient answer, which a Court of equity is without jurisdiction to decide for the purpose of determining whether the will in question should be admitted to probate or whether the order of the Orphans' Court admitting it to probate should be revoked, and which, if the injunction was granted, would remain undisposed of. It is said in 3 *Pomeroys Equity,* sec. 1362, that the rule which authorizes the issuing of an injunction to stay an action at law where the defendant has a purely equitable defense which a Court of law can not recognize and enforce, "assumes that the equitable questions contained in the defense extend to the entire cause, so that their decision determines the entire controversy." Here, in addition to the allegation that the deceased was of unsound mind, the petitioners rely upon the charge that the alleged will was produced by undue influence, which, as we have said, is not sufficiently met by the defense upon which the appellant relies as ground for an injunction.

Without expressing any opinion as to the right of the appellant to enforce the alleged contract of the deceased in a proper proceeding, we must, for the reasons stated, affirm the decree of the Court below refusing to grant the injunction asked for and dismissing her bill of complaint.

*Decree affirmed, with costs.*