COREY ET AL. *v.* CARBACK ET AL.

[No. 52, October Term, 1952.]

*Decided February 5, 1953.*

*Motion for rehearing, filed March 2, 1953, denied March 18, 1953.*

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Emanuel Klawans*, with whom was *Louis M. Strauss* on the brief, for the appellants.

*George W. Baker, Jr.*, with whom were *John G. Rouse, Jr.*, and *Morton & Rouse* on the brief, for the appellees.

HAMMOND, J., delivered the opinion of the Court.

In 1951 Daniel Paul Corey and Joseph Albert Corey, the appellants, brought an action in ejectment in the Circuit Court for Anne Arundel County, against Richard T. and Hazel I. Carback and John J. and Rosalie Carback, claiming ownership of land in Anne Arundel County, described in the Amended Declaration by metes and bounds, courses and distances. The property so claimed and described is made up of three parcels, to each of which, title is derived in a separate way. Fundamentally, the contentions of the parties as to ownership are answered by determination of the boundary line between two contiguous tracts of land called respectively "Poplar Plains" and "Poplar Ridge", the eastern boundary of Poplar Plains being the western boundary of Poplar Ridge.

In 1888 Bernard Oberman acquired title to Poplar Plains. In 1907 he conveyed two acres, comprising its northeast corner, to Henry Jacob Wickart, Jr. and his wife. In 1910 he conveyed a one acre tract to the same grantees, the northern boundary of the one acre tract being the common boundary with the southern line of the first tract. In 1948 Wickart, by then divorced, conveyed the two tracts to John J. Carback and Rosalie Carback, his wife, two of the appellees.

The remaining part of Poplar Plains became vested in Bruner R. Anderson in 1933. In 1935 he conveyed a 13 acre tract to Daniel Patrick Corey and wife, the

parents of the appellants. The southern boundary of the one acre Wickart tract coincides with the easternmost part of the northern boundary of this 13 acre tract. Also in 1935, Bruner R. Anderson conveyed to Bertha H. Linthicum and A. Howell Linthicum what was left of "Poplar Plains". In 1937 Bertha H. Linthicum and others conveyed to the Coreys a strip of land 30 feet wide, which was the same land over which was to run an unopened road 30 feet wide. This proposed road had been included in the description in the deed of 1935 to Corey and his wife as follows:

". . . to the west side of a road to be left open thirty feet wide along the eastern outline of the whole tract, hereinafter referred to, said road extending along the easternmost side of the whole tract of land as an approach to the wharf on Back Creek and with the use of said wharf and road in common with others . . ."

In 1950 Daniel Patrick Corey and his wife conveyed all of the property they acquired by the deed of 1935 and the deed of 1937 to their sons, Daniel Paul Corey and Joseph Albert Corey, the appellants. In 1951 Bertha H. Linthicum, widow, and others executed and delivered a deed to the appellants, in which it was recited:

"WHEREAS, There is a residue of land lying between the Easternmost boundary of the property owned (or formerly owned) by Henry Jacob Wickart, as the same is described in a deed recorded among the said Land Records in Liber W. N. W. No.-6- folio 135, and the Westernmost boundary of the property now known as Poplar Ridge, and which was formerly owned by Joshua F. Johnson, Mabel V. Johnson, J. Purnell Johnson, and Lois P. Johnson; and,

"WHEREAS, the said Westernmost boundary of the said Poplar Ridge property was formerly in dispute, but was finally fixed and deter-

mined by an Agreement between the said Daniel P. Corey and Mabel F. Corey, his wife, and Joshua F. Johnson, Mabel V. Johnson, J. Purnell Johnson, and Lois P. Johnson, dated December 4th., 1940, which said Agreement is filed among the papers in the case of *Joshua F. Johnson, et al, v. Daniel P. Corey and Wife,* No. 22 Trials, October Term, 1940, in the Circuit Court For Anne Arundel County.

"WHEREAS, The said parties of the first part fully intended the said residue of land to be included with their original grants to Daniel P. Corey and Mabel F. Corey, hereinbefore referred to, and further that the said parties of the first part intended to convey the said residue of land to the said Daniel P. Corey and Mabel F. Corey by a Deed dated February 5th., 1941, but which said Deed, however, was not recorded;"

There was a further recital that the parties desired to confirm title in the appellants. The deed granted and conveyed, as one tract, by metes and bounds, courses and distances, all of the land conveyed in the deed dated 1935 from Bruner R. Anderson to Daniel Patrick Corey and his wife, and all of the land conveyed in the deed of 1937 from the grantors of the present deed to the said Daniel Patrick Corey and his wife, and the additional property referred to in the recitals. The description in the amended declaration in this case is the same description which appears in this confirmatory deed.

In 1937 Joshua F. Johnson, and other Johnsons, acquared Poplar Ridge. The owners subdivided this tract into a number of lots. Lot No. 108, Poplar Ridge, as shown on "Plat of Section 1 of Poplar Ridge" and recorded among the Plat Records of Anne Arundel County, is the westernmost lot in Poplar Ridge and the westernmost boundary of Lot 108 coincides with the easternmost boundary of Poplar Plains. The Johnsons conveyed Lot 108, with three other adjoining lots, to

Glenn W. Murray and wife in 1948, and Glenn W. Murray and his wife conveyed those lots to the appellees, Richard T. Carback and Hazel I. Carback, his wife, later in 1948.

On January 6, 1939, Joshua F. Johnson and his co-owners, brought an action of trespass *quare clausum fregit* against Daniel Patrick Corey, the father, (but not his wife) in the Circuit Court for Anne Arundel County, alleging that Mr. Corey had entered upon their said land and cut down certain trees, and claiming $500.00 damages. This is generally referred to in the case as "No. 22 Trials, Oct. Term 1940". Upon the plaintiffs' motion a warrant of resurvey was issued, directed to Edward Hall, Jr., county surveyor. No return of the warrant was ever made by the surveyor, but after Mr. Corey's lawyer had struck his appearance, there was filed in the case, on December 4, 1940, an agreement between the plaintiffs, executed on their behalf by their lawyers, and the defendant, who executed it in proper person and as attorney-in-fact for his wife. This agreement established a boundary line between the property owned by the Johnsons and the property owned by Daniel Patrick Corey and his wife. The line agreed on was drawn on a plat prepared by the surveyor and filed with and as a part of the agreement. This line is located 40 feet east of a line found by the Court to be the western boundary of Poplar Ridge. No order to settle the case was ever filed, and it was, and is now, carried as an open case. It was not entered on the Judgment docket or on the Judgment index.

In 1950 Daniel Paul Corey and Joseph Albert Corey filed in the Circuit Court for Anne Arundel County a bill in equity for declaratory relief against the appellees, who filed a demurrer. After a hearing thereon, the demurrer was sustained on the ground that the suit was essentially one to try title and the appellants had an adequate remedy at law. On April 28, 1951, the appellants brought in the same court an action in eject-ment against the appellees, who filed a general issue

PLAT SHOWING
LAND OF DANIEL D. COREY
ET. AL.
AND ACCESS THERETO, AS
DETERMINED BY COURT'S JUDGEMENT.

SCALE: 1"=50'        DATE: AUG, 1952

J.R. M°CRONE, JR
ANNAPOLIS, MD.

plea and a plea setting forth a defense, on equitable grounds of laches. The case was tried before the Court without a jury (Judge Clark, who heard the equity case the year before, sitting) and the Court decided that the appellants had title to two parcels of land, which are only a relatively small part of the property described in the amended declaration. Judgment for these two parcels of land and for one cent damages, and costs, was entered for the appellants, and this appeal is from that judgment. On September 29, 1952, after the record had been transmitted to this Court, the appellants filed here a motion to strike out the judgment or for other relief.

From the tedious recital of the chain of title which has gone before, it can now be seen that the first parcel embraced in the land claimed by the appellants, is the northernmost 350 feet of the 30 foot wide strip of land referred to in the deed of 1935 from Bruner R. Anderson and others to Daniel Patrick Corey and wife, and later conveyed in fee by the deed of 1937 from Bertha A. Linthicum to the Coreys. The southernmost 500 feet of this 30 foot strip runs along the 13 acre tract acquired by Daniel Patrick Corey and later conveyed by him to the appellants, which is not directly involved here.

The second parcel is a strip of land 40 feet wide and approximately 300 feet long, lying immediately east of the first parcel, and as has been said, the answer to the ownership of this parcel is the determination of the exact boundary between Poplar Plains and Poplar Ridge.

The third parcel is the residue of the property, described in the amended declaration, 54.22 feet wide, at the southern end and adjoining the first parcel to the west. The property of the appellees, John J. Carback and Rosalie Carback, and the first and third parcels of the land claimed by the appellants, came from a common grantor, Bernard Oberman. It is admitted that the appellants own those parts of the first and

third parcels which were not included in the boundaries of the property conveyed to Mr. and Mrs. Carback by Wickart. The appellees, Richard T. Carback and Hazel I. Carback, say that the second parcel, claimed by the appellants, is actually the easternmost 40 feet of Lot 108 of Poplar Ridge, and they deny that the appellants have title to any of it. The answer to the dispute resolves itself in the determination of the location of two boundary lines, viz., the western boundary of Richard T. Carback and wife, and the eastern boundary of the property of John J. Carback and his wife. The Messrs. Carback and their respective wives concede that whatever property lies between these two boundary lines is the property of the appellants.

It will be appropriate to discuss parcels one and three before disposing of parcel number two, and the appellants' motion to strike out the judgment.

The description in the deeds from Oberman to Wickart and the description in the deeds from Wickart to John J. and Rosalie Carback, are identical. These descriptions as to the first tract include a call to "a stake and stone now planted by the side of a bounded double chestnut tree standing on the west side of the road heretofore referred to as leading to the wharf on Bear Creek; thence running with and bounding on said road a northerly course to the place of beginning." As to the second tract, the description includes this: "thence leaving the said outline and running with and bounding on or about the center of the road that leads to the wharf on Back Creek." The Court below, in discussing parcels one and three, said this:

"Parcels Nos. 3 and 1 must, I think, be discussed together. Just how much land the plaintiffs hold in virtue of (1) the deed from Bertha Linthicum and others to Daniel P. Corey and Mabel F. Corey of November 1, 1937, and (2) the confirmatory deed from the said Bertha Linthicum and others to the plaintiffs dated June 19, 1950, depends entirely on the true

construction of the two deeds from Oberman to Wickart heretofore mentioned. In other words, the defendants, John J. Carback and Rosalie, his wife, now own the Wickart's lots, and, as the conveyance thereof were made long before the conveyances under which the plaintiffs claim, the most the plaintiffs can own is what was left after the Wickart lots are carved out. In construing these deeds, we must bear in mind that the road leading to the wharf on Back Creek, therein mentioned, is not the straight strip, thirty feet wide, which the elder Mr. Corey acquired by deed dated November 1, 1937. The road mentioned in said deed, as well as in the deed of November 14, 1935, was nothing but a contemplated road, running along the easternmost boundary of Poplar Plains, and it was never in fact opened. That is not only shown by the testimony, but by certain corrections made by interlineation in the description of the thirteen acres tract as contained in the deed from the elder Mr. Corey and his wife to the plaintiffs dated January 27, 1950. The word 'proposed', was twice interlined when referring to this road, and the words 'intended to be' were interlined in another place. The strip of land, thirty feet wide, to which the plaintiffs claim title in virtue of said deed dated November 1, 1937, is very well shown on the plat made by Mr. McCrone for the defendants, and offered in evidence as 'Defendants' Exhibit No. 2', while the road in use when the Wickart grants were made, and which is still in use is not only shown on that plat, but on the plat made by Mr. McCrone dated November, 1951, and marked 'Court's Exhibit No. 1.' "

The Court went on to find as a fact that the road, eight feet wide, existing on the property, is the same road referred to in the Wickart deeds. He continued, "I

hold that, by the true construction and meaning of these deeds, Captain Wickart took to the center of said road leading to the wharf on Back Creek. This is made necessary by the provisions of Code, Article 21, Section 114, and the decisions in *Campeggi v. Wakefield,* 157 Md. 229; and *Maryland Telephone Company v. Ruth,* 105 Md. 644. . . . This means that I must give the plaintiffs all of that part of Poplar Plains which lies on the east side of the center line of said road, and the defendants all that part thereof which lies on the west side thereof. . . . I gather from this that the defendants feel that because they did not actually eject the plaintiffs from all the land described in the amended declaration, the plaintiffs cannot recover. I cannot follow them in that. . . . In any event, they never conceded the plaintiffs' title to all the land I am giving them. They limited their concession to so much of the thirty foot strip as was not included in the Wickart deeds. The plaintiffs are entitled to a little more than that. In other words, the confirmatory deed of June 19, 1950, did convey a residue of land lying between said thirty foot strip and said Wickart lots."

Judgment was entered in accordance with this finding of the Court; the various parcels of land are all described in the opinion of the Court and that awarded the appellants in the judgment. The Reporter will reproduce with this opinion the plat which was found opposite page 14 of the appellants' brief. On this plat the parcels awarded the appellants are indicated with diagonal lines.

We think that his action was supported by the evidence. In any event, the plaintiffs failed to prove title to more than he gave them and they must win or lose on the strength of their own title. *Joseph v. Bonaparte,* 118 Md. 591, 85 A. 962; and *Giles v. DiRobbio,* 186 Md. 258, 46 A. 2d 611.

Daniel Paul Corey and Joseph Albert Corey claim title to the westernmost forty feet of Lot 108 of Poplar Ridge by virtue of the agreement of December 4, 1940,

entered into between Joshua F. Johnson and his co-owners, on the one hand, and Daniel Patrick Corey and his wife, on the other, and filed in the trespass case of 1939. They produced no other evidence. Their title to parcel number two must depend on the effect of that agreement. Since we find they are not helped by that agreement, we concur with the determination of the Trial Court that the common boundary between Poplar Plains and Poplar Ridge was the so-called "Hall" line, some forty feet west of the agreement line. Both lines are shown on the plat to which we have referred.

Richard T. and Hazel I. Carback claimed, and produced evidence, that they bought and paid for the land involved without any notice of said agreement, and say, therefore, that they are *bona fide* purchasers for value and took title free and clear of any effect of the agreement. It was shown that none of the appellees learned of the existence of the agreement until June 1949, some eight months after Richard and Hazel Carback obtained the deed to Lot 108. This was also true of Arthur A. Anderson, Jr., the lawyer who made the title examination for Mr. and Mrs. Carback. He said that he had examined the public records and that they did not contain any notice of the agreement which settled the disputed boundary line. He testified to thirteen years' experience in examining titles, that he made his examination of title for the Carbacks in 1948 and did not find any reference to the No. 22 Trials, Oct. Term, 1940, nor to the agreement. He said further, that when the Carbacks told him that Mr. Corey asserted there was such an agreement, he twice returned and still found no reference to the agreement. He said he found no reference to it on the judgment docket or anywhere else and that there was no way he could have found No. 22 Trials, Oct. Term, 1940, except by running the law dockets all the way back, which is not the practice of the examiners.

The testimony of the Chief Deputy Clerk of the Court was that at the time of the examination cases were

indexed only in the name of the defendant, so that a search under the name of "Johnson" would not have revealed the case. No. 22 Trials, Oct. Term, 1940, has never been finally disposed of. On the contrary, the case is carried as an open case on the Trial Docket.

There are several ways in which a case may be concluded other than as a result of a trial. "Frequently", says Mr. Poe (Practice, Tiffany Edition, Sec. 236) "the parties before the trial is reached come to a satisfactory adjustment. There are several entries which they may order to be made in this event, viz: They may direct the Clerk to enter the case 'off without costs'. . . . Or the entry may be 'agreed', or 'agreed and settled'. . ." The clerk, in receiving an order to enter a case "agreed and settled", acts only as a ministerial officer of the Court. He has no discretion or initiative in the matter, and no right to make a judicial determination whether or not to make such an entry. An entry "agreed and settled" has the effect of a judgment and may be stricken out by the Court only after a direct proceeding for that purpose. See *Tabler v. Castle*, 22 Md. 94; and *Clark v. Southern Can Company*, 116 Md. 85, 81 A. 271, 36 L. R. A., N. S., 980. The agreement of December 4, 1940 did not direct the clerk to do anything. The clerk is required by Article 17, Sec. 1 of the 1951 Code to file "all papers delivered to him to be filed" but he is not concerned with the merit of the papers nor with their effect and interpretation. If the parties wish the case to be entered "agreed and settled", they or the Court must give the clerk an order to that effect. The Court below decided (correctly, we think) that the Clerk of the Court, by the mere filing with him of the agreement, was not required to transcribe the docket entries in the case in his judgment docket, and index the judgment as required by Sec. 33 of Article 17 of the 1951 Code. He did not do so and the appellees were not put on constructive notice under those circumstances.

There is another reason why the trespass case would not be binding on the appellees, Richard and Hazel Carback. The Court below held that the proceeding was not of a kind to which the doctrine of *lis pendens* was applicable, since the trespass case was for money damages and was not a proceeding directly relating to the property in question. He held that *lis pendens* does not apply to an action of trespass *quare clausum fregit*. We need not and do not decide whether, in a case of trespass *quare clausum fregit*, where there has been a warrant of resurvey issued, *lis pendens* applies. There is some indication in the statutes and cases that it might in some circumstances. Art. 75, Sec. 85, 1951 Code, refers to the issuance and utilization of warrants for resurvey in ejectment, and says that "No warrant of resurvey shall issue in any action of ejectment unless the Court shall be satisfied that there is a dispute about the location of the lands claimed in said action; nor shall any issue in other actions unless there is a dispute about the location of the lands for the injury of which damages are claimed . . ." See also Sec. 86 and 87 of Art. 75; *Giles v. DiRobbio, supra; West v. Pusey,* 113 Md. 569, 77 A. 973; and *B. & O. R. R. Co. v. Silbereisen,* 121 Md. 407, 88 A. 252, 89 A. 102. In *Andrews v. Pitts,* 126 Md. 328, 95 A. 203, there is a full discussion of the history of the use of the warrant of Resurvey in Ejectment and in actions of trespass *quare clausum fregit,* which tends to show that they are equivalent in trying title to disputed lands. We may assume, without deciding, that the trespass case of 1939 was one which would invoke the doctrine of *lis pendens,* and yet deny it that effect, because it is thoroughly established that in order to constitute *lis pendens,* there must be a continuance of *litis contestatio.* There can be no long and unexplained delay in the prosecution of a suit. See *Taylor v. Carroll,* 89 Md. 32 at 36, 42 A. 920, 921, 44 L. R. A. 479, which adopts the language of *Pomeroy,* in his work on *Equity Jurisprudence,* as follows: "In order, however, that a purchaser *pendente lite* may be

thus affected, the suit must be prosecuted in good faith with all reasonable diligence and without unnecessary delay. A neglect to comply with this requisite would relieve a purchaser from the effect of the *lis pendens,* as notice." See also *Price v. McDonald,* 1 Md. 403, at page 412; *Rupp v. Rogers,* 118 Md. 534, 85 A. 774; and *Frank, "Title to Real and Leasehold Estates",* p. 289. There the author says, "In order, however, that a purchaser *pendente lite* may take subject to the outcome of the litigation, the suit must be prosecuted in good faith, with all reasonable diligence and without unnecessary delay. A neglect to comply with this requisite would relieve a purchaser from the effect of the *lis pendens* as notice. If the claimant failed in diligent prosecution of the action, the consequences are the same as if no action had been begun." We think failure to close the case for years would relieve the Carbacks from the effect of *lis pendens* if it otherwise were applicable.

The appellants' motion to strike out the judgment, in effect, asks this Court to assume original jurisdiction. The basis for the relief sought is that in 1938 Joshua F. Johnson and his co-owners brought suit against Daniel P. Corey, in equity, for continuing trespasses by Corey on the Johnson land, and that the index to the equity docket for the Circuit Court in Anne Arundel County for the period from July 1, 1937 to 1949 shows the case of *Joshua F. Johnson, et al v. Daniel P. Corey,* No. 7638, Equity Docket 10, Folio 219, and that the case was indexed under the name of Joshua F. Johnson and each of the other Johnsons, as well as under the name of Daniel P. Corey. It is argued that a title examiner, running the equity index, would have found this case and that in the papers in the case, there is a reference to the trespass suit of Joshua F. Johnson against Daniel P. Corey, and so a careful title searcher would have found the trespass case and inevitably would have found the agreement of December 4, 1940. It is difficult to see, on close examination, how the appellants improve their position, by saying that if they

had known of the equity case at the time of the trial or had it been known to Mr. Anderson, that the result of the trial would have been different. It is not argued, and the Court did not find, that the Carbacks had actual notice of the agreement. The Court below decided, and we have agreed, that No. 22 Trials, Oct. Term 1940, was neither a completed or properly indexed case which the statute made constructive notice, nor a case to which the doctrine of *lis pendens* was applicable, and therefore, it could not offer constructive notice on either theory. Thus, it is of no consequence that it might have been possible to discover the agreement, since, in fact, it was not discovered.

Regardless of the consequences or effect of the 1939 equity case, this Court is without jurisdiction to grant the motion to strike out judgment or give other relief, which does not arise from or depend on the record in this Court. In *Smith v. Hooper*, 95 Md. 16, 51 A. 844, 54 A. 95, there was a motion to remand a case to the Trial Court for further proceedings, on the ground that the true facts were wholly and radically different from those contained in the record and that if the appellant were permitted to submit them, the result would be the reverse. The appellant argued that the Court had power to grant the relief under the provisions of Article 5, Sec. 36 of the Code. The Court decided it had no such power, either under the statute or otherwise, saying, "It must be borne in mind that this Court has no original jurisdiction. Its functions are purely appellate. If the statutes do not give jurisdiction to hear a case except upon the record as transmitted, then it is obvious that this Court has no power to inspect documents or to consider evidence with a view to determine whether facts stated in the record to be facts, are facts or simply fiction." See also *Stanley v. Safe Deposit & Trust Co.*, 87 Md. 450 at page 459, 40 A. 53, 56. There this Court said, in referring to a petition filed by the appellant after the argument praying that the Court suspend the determination of the case until proof can be introduced

either in the Court of Appeals or in the Court below, in support of the appellant's petition: "This is a very unusual request and one that we manifestly have no authority to grant. In effect the petition asks leave to make out a new and totally different case. . . We must deal with cases as they are brought before us by the record transmitted from the Court below, and we have no power, whilst reviewing a particular order from which an appeal has been taken, to receive evidence or to remand the record for the Court below to hear testimony on totally different questions that in no way reflect on the only issue brought to this Court for review." See also *State v. Rutherford,* 145 Md. 363.

In *United Railways Co. v. Corbin,* 109 Md. 52, 71 A. 131, 132, the Court suggested that a way out of the dilemma, where the appellant wished to have the lower court in that case strike out judgment by saying that it could not be done while the appeal was pending, but that "If the appellant desired such motion to be acted on by the lower court, it had the undoubted right to dismiss its appeal and thereby enable that court to act on the motion". The appellants here do not seem to challenge the correctness of the ruling of the Court below on the evidence before it, as much as they rely on evidence they assert to have been discovered and to be available on a re-hearing. We must decide the case as it comes to us. As the Court said in *Giles v. DiRobbio, supra,* in discussing a somewhat similar endeavor, on the ground of newly discovered evidence in a trespass *quare clausum fregit* case, "It is the policy of the law that litigation be finally terminated. To permit appellant to dismiss the appeal, restore the case on the trial docket, and then dismiss the case, without prejudice, would be a violation of that policy. The only purpose of such proceeding would be to enable appellant to reinstitute the case, to the end that it be tried over again, in the hope of better results to the appellant." We concur in that reasoning.

*Judgment affirmed, with costs.*