## JOSEPH B. ANDREWS

*vs.*

## W. MARION PITTS.

*Trespass q. c. f.: warrant of resurvey; at direction of court; effect of—; cross-examination of surveyor who made plat; locating lines; uncalled-for stones; when not evidence.*

In an action of trespass *q. c. f.* the Court, in its discretion, may, under Chapter 177 of·the Acts of 1852, order a warrant of resurvey, when satisfied that it is necessary "for the better information of the court and jury in the truth of the premises," that the lands be resurveyed and laid out, even though there has been no defense on warrant. p. 332

When a warrant is so issued, the rules of practice applicable to surveys made after defense on warrant apply. pp. 332-333

Under section 80 of Article 75 of the Code, the defendant can no longer take defense on warrant as matter of right, and have a resurvey of the disputed land. p. 332

In such an action, where the plaintiff is permitted to prove, by the surveyor, lines located on the plat which he relied on to show where his property was located, the defendant may cross-examine the surveyor, to show that the lines were not correctly located. p. 334

If a corner or boundary is established at a point before the lines in dispute are reached, a survey may begin at such point, instead of going back to the beginning of the tract; but a stone, not called for in any of the descriptions, and not explained beyond, may not be used as the beginning of a certain line of a tract. p. 337

In the absence of a call, or some proof of the point, courses and distances must govern. p. 338

In locating a patent or other conveyance, two uncalled-for and unexplained stones, which happen nearly to correspond in distance and direction with the lines of the patent, etc., can not be taken as thereby establishing such lines.          pp. 337-338

*Decided June 22nd, 1915.*

Appeal from the Circuit Court for Dorchester County. (JONES and STANFORD, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, PATTISON, STOCKBRIDGE and CONSTABLE, JJ.

*Clement Sulivane* and *J. Watson Thompson,* for the appellant.

*V. Calvin Trice* and *T. Sangston Insley,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a judgment rendered in favor of the defendant (appellee) in an action of trespass *quare clausum fregit,* brought by the appellant. The *narr.* alleges that the defendant "wrongfully entered upon and cut down and carried away trees from all that part of a tract or parcel of land, called 'Fair Dealing' and commonly known as the 'Henry D. Wright Mill Property,' owned by the plaintiff in fee simple, lying and being in Hurlock District of Dorchester County, which is bounded on the north and east by the old mill stream and branch, and on the south and west by the lands of John P. Harper, W. Marion Pitts, Lizzie Barber and Benjamin F. Merrick, as said lands stood in the year 1902." The defendant pleaded that he did not commit the wrongs alleged, and the trial of the case was begun. There then appears in the record: "Jury empanelled and sworn, April 28, 1914. On motion, leave granted plaintiff for war-

rant of resurvey and to withdraw a juror.   Juror with-
drawn."   In the docket entries a similar entry appears, and
on May 20th a warrant of resurvey was issued.   The appel-
lant contends that the warrant was issued by the direction of
the Court, and not on his motion.   The resurvey was made
and the certificates, plats, etc., were returned by the surveyor
and sheriff in pursuance of the requirements of the warrant.
On November 11th, 1914, another jury was empanelled
which rendered a verdict in favor of the defendant.   On that
verdict there was a judgment for defendant for costs from
which this appeal was taken.

At the trial of the case the plaintiff offered the patent for
"Fair Dealing" and certain deeds in support of his title.   He
then offered the plat and certificate made by the surveyor
and his testimony to explain the plat and objects thereon.
"Counsel for defendant then began a cross-examination of
the witness by asking him what he did on the first day he
went to the land to make his survey.   Plaintiff's counsel ob-
jected to the question as tending to impeach the plaintiff's
survey and location; there being no defense on warrant and
the survey having been made by direction of the Court, and
the correctness of the location being admitted by the plea,
but the question was admitted by the Court, subject to the
objection, wherefore plaintiff's counsel stated to the Court
that he objected to any testimony being taken by the defend-
ant attacking or in any way impeaching the location of the
alleged trespasses of the defendant, alleged in the declaration,
and made by the plaintiff under direction of the Court"; but
the evidence was admitted subject to exception.   The defend-
ant's attorney then continued to cross-examine the surveyor
and he (his testimony being still subject to exception) ex-
plained to the jury the survey made for the defendant and
the objects pointed out by his witnesses.   The plaintiff moved
to exclude the testimony admitted subject to exception, and
that motion being overruled the plaintiff excepted.   The
action of the Court is presented by the first bill of excep-
tions.

1.   The theory of the appellant is, as stated in his brief, that "When the defendant pleads not guilty of the wrongs alleged, and does not take defense on warrant, the location, as alleged, is admitted by the plea, and the plaintiff is not required to prove it, nor is the defendant allowed to gainsay it." As the record shows that there was a motion by, and leave granted to, the plaintiff for a warrant of resurvey, we do not understand how the mere statement in the first bill of exceptions that the survey was made by "direction of the Court" can in any way affect defendant's right to dispute the correctness of the locations made by the plaintiff, unless it be, as seems to be contended by the appellant, that the defendant cannot have the benefit of the survey made by direction of the Court, if he had not taken defense on warrant. If that be appellant's contention we cannot agree with him, as we have no doubt about the right of the Court to order a warrant of resurvey when satisfied that it is necessary "for the better information of the said Court and the jury in the truth of the premises," that the lands be carefully resurveyed and laid out, etc., as stated in the form given in 2 *Harr. Ent.* 785. Until about 1700 the practice in the provincial Court of Maryland was to issue a warrant to the surveyor to lay out the land in dispute in the presence of the sheriff, who was commanded to summon and empanel a jury to go upon the land, and the surveyor was directed "to run the lines according to the patent and the direction of the jury, 2 *Poe* 470; *McHenry on Eject.* 60, and cases reported in early part of 1 *H. & McH.* If the jury agreed as to the proper mode of laying out the land, the Court sometimes entered up a judgment on its verdict. In the note to *Shaw* v. *Lynes,* 1 H. & McH. 18, Mr. Brantly gives a list of over twenty cases in each of which the warrant of resurvey was executed by a surveyor in the presence of the sheriff "under the direction of a jury of the neighborhood." In *Watkinson* v. *Collins, Ibid.* 12, after several attempts a jury was finally empanneled which agreed upon a verdict, which was signed and sealed by

the surveyor, sheriff and jurors, and the report of the case
then states: "Which being read and heard, the defendant,
by his attorney, pleaded not guilty, and issue was joined,"—
the survey being thus made before a plea was filed.    The
record does not show whether defense on warrant was en-
tered, but if it was, it was not regarded as part of the plead-
ings.    Somewhere about the beginning of the 18th century,
or towards the end of the previous one, the practice of having
a jury go upon the land and directing the surveyor how the
location should be made was abandoned.    After that the war-
rant was executed by the surveyor in conjunction with the
sheriff, as is still the practice.    In 2 *Poe,* sec. 470, it is said:
"It seems probable, too, that what was at first allowed by the
Court upon application, and, perhaps, only after cause shown,
came soon to be recognized as a right, and that in order to
*entitle* himself to a resurvey of the land, the defendant, after
pleading not guilty, simply gave a direction to the clerk to
enter on the docket the words "defense on warrant"; and
thereupon, without any formal application to the Court, and
without any special order from it, the plaintiff was required
to issue his warrant of resurvey, and prove his title and pos-
sessory right to the land described in the declaration by estab-
lishing its boundaries, courses and distances."    Under such
circumstances it was very properly said by JUDGE DORSEY
in *Addison* v. *Hack,* 2 Gill, 221, that: "In an action relating
to lands, if the defendant does not see fit to take defense on
warrant, the plaintiff is under no obligation to ask for a
warrant to locate his land, or any of the matters in contro-
versy between the parties."    The plaintiff had burdens
enough on him when defense on warrant was entered, and
if he received no notice that the defendant would take "de-
fense according to his pretensions as they shall appear to be
laid down on return of a warrant of resurvey" (2 *Harr. Ent.*
55), he had the right to assume that the defense was simply
one of title and not of location.

But the abuse of the privileges of defendants under the
practice as it became established was so oppressive that the

Act of 1852, Chapter 177, was passed. That made radical
changes in the practice, and it seems to us that there can now
be no question about the right of the Court, when it is satis-
fied that there is a dispute about the boundaries, to order a
warrant of re-survey to be issued, although the defendant
has not taken defense on warrant, and when a warrant is so
issued, the rules of practice applicable to surveys made after
defense on warrant is taken, apply. The defendant can no
longer take defense on warrant *as matter of right,* and have a
re-survey of the disputed land. Section 80 of Article 75
of the Code provides that "No warrant of re-survey shall issue
in any action of ejectment unless the Court shall be satisfied
that there is a dispute about the location of the lands claimed
in said action; nor shall any issue in other actions unless
there is a dispute about the location of the lands for the
injury of which damages are claimed, or unless the Court
shall be satisfied that plats are necessary for illustration,"
and section 81 is, "any action where the parties hold or claim
under the same title the lands in dispute, no warrant of re-sur-
vey shall issue, except in cases where the parties claim differ-
ent parcels under the same title, and it appears to the Court
there is a dispute about the location of the divisional line or
lines."

Application must therefore be made to the Court, and the
warrant can only issue on its order, or by agreement of the
parties. Section 82 shows clearly that the warrant can be
taken out at the instance of either party. It says, "Where a
warrant of re-survey shall be issued in any action of eject-
ment or other action, the party applying for such warrant
shall first make the location of his claim and pretension, and
such other location as he may think necessary to bring the
cause fairly to trial." But if the Court becomes satisfied that
the ends of justice require a warrant of resurvey to be issued,
there can be no reason why it can not of its own motion direct
it to be done, and if the warrant is ordered on motion of the
plaintiff, or at the instance of the Court, there can be no
possible reason why there should not be the same rules as to

locations as if it was taken out by the defendant. We have been speaking as if this was an action of ejectment, but there is as much, if not more, reason why what we have said should apply to an action of trespasss *quare clausum fregit.* In *Funk* v. *Hughes,* 5 Gill. 315, which was an action of trespass, the warrant was taken out by the plaintiff, as is shown by an examination of the record, and that was before the Act of 1852 was passed. It was there held, quoting from the syllabus for convenience, that: "Under issue joined in an action of trespass upon the plea of not guilty, the plaintiff may recover damages for any trespass by the defendant of the nature described in the declaration, and committed anywhere within the lines of the tract of land mentioned in it. But where plats are deemed requisite, it is necessary for the plaintiff to locate correctly, not only the tract of land claimed, but the spots within the lines of such tract, whereon the trespass was committed, and of which the plaintiff complains, and to such spots his proof must be confined. Places of trespass, of which the explanations are silent, can not be proved." See also what was said in *Parker* v. *Wallis,* 60 Md. 15, about the importance of a survey under the order of Court in such cases.

2.　The appellant contends that "when no re-survey is required by the pleadings, if one is made and offered in evidence, it is inferred that it was authorized for illustration only," and cites *N. Y. P. & N. R. Co.* v. *Jones,* 94 Md. 24, in support of that contention. But that was a wholly different case from this. There was no dispute there as to the location of the lands for the injury of which damages were claimed, and hence the Court said that, "It must be considered that the plat was authorized for illustration only." JUDGE PEARCE, after quoting from *Addison* v. *Hack,* 2 Gill. 221, was careful to refer to the fact that since that case was decided, the Act of 1852 was passed, by which it was provided that "In no action shall plats be considered as pleadings or evidence *per se,*" sec. 85 of Art. 75. The clear inference to be drawn from that decision is that where the title involved depends

upon conflicting pretensions or disputed lines and a warrant
of re-survey is issued the evidence must be restricted to such
objects, etc., as are located on the plats. Moreover, in *Peters
v. Tilghman,* 111 Md. 227, which was an action of trespass
*quare clausum fregit,* the defendant first took defense on
warrant, but that was countermanded, and a warrant of
re-survey was granted to the plaintiff and a survey and plat
filed. JUDGE PEARCE delivered the opinion in that case, and
distinctly recognized the necessity for locating objects on the
plat, in order to have them considered by the jury, where
the warrant was taken out by the plaintiff and the defense on
warrant had been countermanded. But the description of
the property in the *narr.* in this case, as shown above, sug-
gests the necessity for a warrant of re-survey. It would have
been impossible for a jury to have properly determined where
the lands of the defendant and other parties named "stood
in the year 1902" without a survey, even if the other lines
of plaintiff's lands were conceded to have been correctly
located.

In addition to what we have said above we can not under-
stand upon what theory the plaintiff could be permitted to
prove by the surveyor, lines located on the plat which he
relied on to show where his property was situated, but the
defendant could not be permitted to cross-examine the sur-
veyor, or attempt to show that those lines were not correctly
located. Even if the failure of the defendant to take defense
on warrant did have the effect the plaintiff claims—that is to
say, that he admits, by merely filing the general issue plea,
the location of the trespasses—still as the plaintiff did call
the surveyor and other witnesses for the purpose of proving
it, surely the defendant could not be penalized for not taking
defense on warrant to the extent of not being permitted to
meet the evidence offered by the plaintiff, if the plat was only
intended to be used for purposes of illustration.

We are then of opinion that there was no error in the
ruling on the first exception, and the ruling in the second

exception is equally free from error and practically presents the same question as the first.

3. The plaintiff offered seven prayers, all of which were granted, except the fourth, which was rejected because it was covered by the first, and no exception was taken to its rejection. The appellant has no reason to complain of the Court's action on his prayers, but he does complain of the ruling on the defendant's first, second and fifth prayers, which were granted, and alleges that they are inconsistent with those granted at his instance. We will first consider the defendant's fifth prayer, which instructed the jury, "that there is no evidence in this case tending to prove that the stone at 'B' on the plat, returned by the surveyor in the sheriff's return," is at the end of the 18th course or at the beginning of the 19th course on the tract of land, mentioned in the evidence, and described in the patent as 'Fair Dealing.'" It is peculiarly expressed—no evidence "tending to prove"—but we suppose it meant that there was "no evidence legally sufficient to prove," etc., and as we are of the opinion that such was the case, there was no reversible error in granting that prayer. There is no evidence that that stone was at the end of the 18th or the beginning of the 19th line of the tract. No stone is called for at that point, either in the patent for "Fair Dealing," or in the descriptions in the deed from William Dines to Lockwood and Wright for the Mill Site property.

H. Martin Wright testified that, "He was born and brought up on that part of 'Fair Dealing' which was always known as the old Henry D. Wright mill property within 100 yards of the stone marked on the plat as letter 'B.' It was in their front yard * * *. It is part of an old mill stone, and a very heavy stone, being about 18 inches in diameter, and firmly sunk in the ground. His father pointed it out to him as a boundary stone of the mill site property bought from Dines and Lockwood. He had not been there for over thirty years until that morning of the survey, when, after he had located the spot where the dwelling house had stood by the remains

of a chimney, he knew at once where the stone was and walked straight to the spot. The stone was in a little patch of weeds and briars and covered over by the light, sandy soil, but upon scratching around with his foot he soon found and uncovered it, and pointed it out to the surveyor." There is another stone located at what the appellant claims is at the end of that line. Mr. Wright testified as to that: "The next stone, down the hill and in the branch, he knew was there because his father one day pointed out the spot, and said another boundary stone of the property was there in a patch of briars. Witness did not go to look at it, and never saw it until the day of survey, but knew it was there and after locating the first stone at letter 'B', he had no difficulty in walking down and find this second stone, and he pointed it out to the surveyor." Rink Phillips, another witness for appellant, said: "The stone at letter 'B' on the plat was there when he lived as tenant on the farm in Mrs. Stafford's time, as also were the stones down the hill in the branch at the end of the first line. He saw them often." That was all the testimony on the subject of stone "B", excepting Frank T. Turpin testified "that he has lived a mile and a half from the Henry D. Wright mill property since 1871. Knew Henry D. Wright from that time on. For several years he was around the home place at the mill. He never saw any stone there where the one was found marked letter 'B' on the plat. There used to be a stone about one hundred yards from the mill, and a road running by it about here (indicating a spot on the plat not located, and in a different direction from letter 'B')." Thomas J. Hackett testified "that in a practical way he has known this Henry D. Wright farm all his life." About a year and a half before, he and another bought the Henry D. Wright mill property, excepting the part across the mill stream in dispute. He was asked by Mr. Martin Wright if he could show him where the old mill site was and he did show him. Mr. Wright then found the stone, but Mr. Hackett said he had never seen it before. That is all the evidence in the record on the subject.

## 338 ANDREWS *vs.* PITTS.

It will be observed that none of the witnesses pretended to say what boundary, or at the end of what line, stone "B" was. Nor is it shown who put the stone there, or by what authority it was done. As we have seen, no stone is called for, and the only evidence by which it is attempted to show it was connected with this property is that the then owner said it was *"a boundary* stone of the mill site property." None of the lines of "Fair Dealing" prior to the 19th or of the mill site property prior to the 38th were run, nor were any of the previous corners established. We cannot give our sanction to the method adopted on this survey in locating the divisional lines in dispute. Of course if a corner or boundary is established at a point before the lines in dispute are reached, a survey may begin at such point, instead of going back to the beginning of the tract, but to assume that a stone, not called for in any of the descriptions, and not explained beyond what we have shown above, is the beginning of a certain line of a tract, without any proof as to that, and then run the lines in dispute based on that assumption would be a dangerous rule of location to adopt. It would enable the owner of a property to fix the boundaries of his own property for the benefit of himself or his heirs, if he could plant a stone where he pleased, call it "a boundary" of a tract, and then when he is dead have his son testify to such facts as we have in this case, without any explanation as to who planted the stone, or by what authority it was done. Of course we do not mean to intimate that either the deceased Mr. Wright or his son did or said anything improper, but we only refer to what might be done by those willing to do wrong or to adopt their own ideas about their corners regardless of whether they were right or what others said or thought. If the survey of this tract had been started at some established point, and in running the lines one of them passed this stone, it might have been located for what it was worth, but to start a survey by assuming that a stone simply said to be a *boundary* of a tract was *the beginning* of *a particular line* of that tract, without any other proof, is going too far and cannot be

permitted.    These stones are not in fact the exact distance
or direction from each other that the 19th line calls for in
the patent, but as they are not so very far out of the way we
will not discuss that phase of the question; but we hold that
a party cannot take two uncalled for, and unexplained stones,
which happen nearly to correspond, in distance and direction,
with a line of a patent, or other conveyance, and thereby
establish the line.    Inasmuch as there was no call at the end
of the line, or proof of where the end was, of course it was
error to correct the survey to that second stone, for, in the
absence of a call or some proof of the point, the courses and
distance must govern.    If the second stone had been proven to
be at the end of the 19th line, and the course and distance
of that line had been reversed in order to find the beginning
of it, it would not have been permissible to correct to stone
"B", because there was no call or proof to authorize the cor-
rection, and there is no rule applicable to locations in these
cases, which we are aware of, that would permit a party to a
suit to start the running of the tract at stone "B" as the
beginning of the 19th, or any other particular line, under
such evidence as we have quoted above.

We are also of the opinion that there was no reversible
error in granting the defendant's first and second prayers.
They might have been made clearer—might have more defi-
nitely referred to *the part of* "Fair Dealing," known as the
Henry D. Wright Mill property, instead of saying, as was
done in the first prayer, "that if they shall find from the
evidence that the plaintiff has not so located or proved the
lines of 'Fair Dealing,' or the Henry D. Wright Mill prop-
erty, as mentioned in the *narr.*, or that part of the said lines
which are the division lines," etc.    The second speaks of
"the lines of the tract of land called 'Fair Dealing,' commonly
known as the Henry D. Wright Mill property, as described
in the *narr,*" etc., instead of saying *"that part of the line*
of the tract," etc.    But no injury was done the appellant.
as what was meant was evidently understood, and in our
judgment an instruction could properly have been granted

that neither of those tracts nor the divisional lines were properly located.

A prayer to the effect that the plaintiff had not so located the tract described in the *narr.* as to entitle him to recover might properly have been presented to test the sufficiency of the survey made by the plaintiff, for even if it could be conceded that the survey for the plaintiff did properly locate the lines of "Fair Dealing," and the Mill Site property (which lines are the same, with different numbers, along the disputed territory), it would not necessarily follow that the defendant's lines stop at the lines of "Fair Dealing." The *narr.* described the land as bounded "on the south and west by the lands of John P. Harper, W. Marion Pitts," et al., "as said lands stood in the year 1902." It is not shown by the survey where the lines of defendant stood in the year 1902, or even when this survey was made. His deed was not located. So taking the whole case into consideration, we find nothing in the rulings of the Court that the appellant can complain of, and we will affirm the judgment.

> *Judgment affirmed, the appellant to pay the costs above and below.*