ZAWATSKY CONSTRUCTION COMPANY, INC. *v.* FELDMAN DEVELOPMENT CORPORATION

[No. 13, October Term, 1953.]

*Decided November 10, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*David I. Absè* for the appellant.

*George T. Burroughs,* with whom was *T. Hammond Welsh, Jr.,* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This action of ejectment was brought in the Circuit Court for Prince George's County by Feldman Development Corporation against Zawatsky Construction Company, Inc., to recover possession of a triangular strip of land in the subdivision known as "Woodlawn" at Hyattsville. The Court awarded plaintiff a judgment

.for the property and one cent damages, and defendant appealed from that judgment.

The land in dispute is a portion of a tract of 156 acres conveyed to Miletius J. Wine in 1882. The tract was subdivided for him by George W. Jackson, surveyor, into 23 lots. Through the center of the tract a 30-foot roadway extends from the south end to lot 12 at the north end. On each side of the roadway are 11 lots.

Lot 1 is situated at the southeast corner of the tract. East of the roadway lots 1 to 11 run northward. West of the roadway lots 13 to 21 run southward. Lots 23 and 22 extend west of lots 16, 17, 18 and 19.

Plaintiff is the owner of lots 6, 7 and 8, known as "Feldman's Addition to Woodlawn." Defendant owns the northern part of lot 5.

The contest is over the location of the divisional line between lot 5 and lot 6. The controversy is the result of a number of errors which were made by Jackson in the courses and distances of the divisional lines in the subdivision. The problem was complicated by the uncertainty as to whether any of the stones, which were used by some of the surveyors in recent years, were actually on the ground when the tract was subdivided in 1882.

Plaintiff claims that the proper method of locating the line in dispute is to begin at a stone mutually agreed upon as the southeast corner of lot 6 and to follow the direction marked on Jackson's plat.

Defendant claims that the proper survey was made by his surveyor, Thomas McNeill. That surveyor started at the extreme western end of the plat. First, he established the northwest line of lot 22 by using a stone at the west corner of lot 20 and a stone at the west corner of lot 22. As the distance marked on the plat for the northwest line of lot 22 did not reach what he believed to be the north corner of lot 22, he assumed that the distance marked on the plat was incorrect, and so he added 57.7 feet. He felt that he was justified in ignoring the plat because he found a stone 57.7

feet northeast of the stone at the west corner of lot 22. In running the northwest line of lot 22, he also disregarded the bearing specified on the plat.

He then ran other lines by adopting the courses and distances which he had found in the title of the adjoining land owned by James W. Campbell. In locating the west corner of lot 13, he used a stone mentioned in Campbell's title, and ran the line of this lot in accordance with Campbell's title. He could not adopt all of the courses and distances on Campbell's title, but he reconciled them with the courses and distances of the tract in controversy as best he could. He ran a line along what he considered to be the west boundaries of lots 19, 18, 17 and 16, and finally he established what he claimed to be the southwest corner of lot 16. He claims that this corner is the northwest end of the line between lots 16 and 17, west of the roadway, and between lots 5 and 6, east of the roadway. If this method of survey were adopted, it would give defendant a triangular strip of land measuring 911.3 feet on one side and 885.43 feet on the other with a base measuring 55.09 feet.

Defendant contends that in determining the lines of an inaccurate survey, monuments are more reliable than courses and distances. But it is not safe to assume, without sufficient proof, that a monument which is not mentioned in the description of a tract is the beginning of one of the boundary lines of the tract, and then run the line based upon that assumption. Chief Judge Boyd, speaking for this Court in *Andrews v. Pitts,* 126 Md. 328, 338, 95 A. 203, emphasized the danger of making such an assumption in the following language: "It would enable the owner of a property to fix the boundaries of his own property for the benefit of himself or his heirs, if he could plant a stone where he pleased, call it 'a boundary' of a tract, and then when he is dead have his son testify to such facts as we have in this case, without any explanation

as to who planted the stone, or by what authority it was done."

It is recognized that where there are conflicting surveys, the problem before the court is fundamentally one of fact, inasmuch as the general rules as to preferences are merely guides for ascertaining the intention of the parties. *Wood v. Hildebrand,* 185 Md. 56, 60, 42 A. 2d 919; *Dundalk Holding Co. v. Easter,* 195 Md. 488, 495, 73 A. 2d 877. Thus, while it is a general rule that calls in a deed ordinarily prevail over courses and distances, this rule is not applied if it defeats the manifest intention of the parties. *Giles v. deRobbio,* 186 Md. 258, 265, 46 A. 2d 611.

There are strong objections to defendant's method of locating the line in dispute. One of these objections is that there appears to be no justification for adding 57.7 feet to the northwest line of lot 22. Defendant's surveyor admitted that what he considered to be the northwest line of lot 22 is 57.7 feet longer than the line specified by a survey made in 1881, by Wine's deed, and by Jackson's plat. Moreover, his distances for the northwest lines of lots 17, 18 and 19 are at variance with the 1881 survey, Wine's deed, and Jackson's plat.

Another objection to defendant's survey is that by using a stone mentioned in Campbell's title to locate the west corner of lot 13, it is necessary to cut 60 feet from Campbell's land to prevent it from overlapping the tract in controversy. No justification was shown for cutting 60 feet from his land. Nor was there any satisfactory reason given to explain why some of the measurements of Campbell's land were accepted but not others.

Still another objection to defendant's survey is that, by distributing 57.7 feet to the western lines of lots 17, 18 and 19, the northern and southern lines of these lots would not be parallel, although the plat plainly shows them to be parallel. Likewise there would be

a similar distortion of lots 3, 4 and 5 on the east side of the roadway.

The trial judge commented that where there are many errors on a plat, they ought to be minimized, rather than allowed to accumulate, and he suggested that the roadway would probably be a logical place to "absorb" some of the errors. Defendant urged that if corrections are made at the roadway, the south line of lot 6 would not necessarily be on a line with the south line of lot 16 on the other side of the roadway. However, this slight difference in location between the east lots and the west lots seems to us to be a slighter variation from the plat than defendant's plan under which lines definitely shown to be parallel will no longer be parallel.

For these reasons we agree with the trial judge that the preferable method of establishing the south line of lot 6 is to begin the survey at what is mutually agreed to be the southeast corner of the lot, and to follow the bearing designated by the survey of 1881, by Wine's title, and by the plat of the subdivision made by Jackson in 1882. It is, therefore, our judgment that plaintiff is the owner of the strip of land claimed in this action.

Defendant insisted that, even though plaintiff may be found to be the owner of the strip of land, it is estopped from asserting its title. Defendant asserted that, after relying on the line established by McNeill, its surveyor, as the north line of lot 5, it built houses on its land and sold them to a number of individuals. It further asserted that in April, 1950, plaintiff prepaired a subdivision of lots 6, 7 and 8, and stood silently by and permitted defendant to make the improvements and sales without notifying defendant of any possible encroachment until the institution of the action of ejectment in September, 1950.

It is provided by statute in this State that in any action at law in which, if judgment were obtained, the defendant would be entitled to relief against such judg-

ment on equitable grounds, he may plead the facts which entitle him to such relief by way of defense, and the court in which the action is pending may receive such defense by way of plea, provided that the plea begins with the words "For defense on equitable grounds" or words to that effect. Code 1951, art. 75, sec. 91. Thus, in any case in which a court of equity could enjoin the prosecution of an action of ejectment, the defendant, by filing a plea on equitable ground, can set up the facts creating his equitable defense as a bar to the action. This right, when properly claimed, enables the person equitably entitled to possession to defeat the holder of the legal title in his attempt to obtain possession by an action of ejectment. However, in order to render such a plea sufficient, the facts it alleges must be such as would entitle the defendant to relief in a court of equity against the judgment, if recovered. *Shartzer v. Mountain Lake Park Ass'n*, 86 Md. 335, 338, 37 A. 786; *Michael v. Jay,* 91 Md. 75, 46 A. 385; 1 *Poe, Pleading* and *Practice,* Tiffany's Ed., sec. 275A.

Of course, where the jurisdiction of equity is original and well established, it is not ousted by a statute conferring jurisdiction over the subject matter to courts of law, unless the jurisdiction of equity is removed by express prohibition. Hence, a defendant cannot be deprived of his right to raise the defense of equitable estoppel in a court of equity, unless he elects to try it in a court of law.

It was stated at the argument on appeal that no building had been erected on the triangular strip of land in dispute. However that may be, the only plea filed by defendant in the Court below was "Not guilty." As defendant did not file any plea on equitable grounds, it could not set up equitable estoppel as a defense. The only issues before the Court were plaintiff's title and right of possession and any damages to which plaintiff may be entitled.

The case was tried without a jury. When any proceeding at law has been tried upon the facts by the court without a jury, the Court of Appeals may review upon both the law and the evidence, but the judgment of the trial court will not be set aside on the evidence unless clearly erroneous. General Rules of Practice and Procedure, part 3, subd. 3, rule 9; *Appel v. Hupfield,* 198 Md. 374, 84 A. 2d 94; *Goodwin v. Lumbermens Mutual Casualty Co.,* 199 Md. 121, 85 A. 2d 759; *Seybolt v. Baber,* 203 Md. 20, 97 A. 2d 907.

For the reasons we have stated we cannot hold that the judgment rendered in the Court below in favor of plaintiff is clearly erroneous. The judgment will therefore be affirmed.

*Judgment affirmed, with costs.*