APPEL ET UX. *v.* HUPFIELD

[No. 13, October Term, 1951.]

*Decided November 1, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*J. Purdon Wright,* with whom was *William Bruce Oswald* on the brief, for the appellants.

*Hyman A. Pressman* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This is an action for deceit brought in the Superior Court of Baltimore City by John H. Appel and Myrtle M. Appel, his wife, against Frederick H. Hupfield, a real estate broker, to recover damages alleged to have been caused by fraudulent representations made by defendant to induce the execution of a contract for the purchase of a house on the Alameda in Baltimore.

Plaintiffs were shown the house on June 15, 1949, by Mrs. George V. Kelly, defendant's saleswoman, who told them that they could buy it for $8,500, provided that they paid at least $750 in cash. Plaintiffs could not pay that amount unless they could sell the house where they resided at 1409 North Gay Street. Mrs. Kelly assured them that defendant could sell their house in time for the settlement. On June 16 Mrs. Appel called at defendant's office and told him that she and her husband were considering the purchase of the house on the Alameda, but could not settle for it unless they sold their house on Gay Street. Plaintiffs claim that defendant assured them that he could sell their house for $5,500 in time for the settlement, and in the meantime would obtain a loan of $750 for them by second mortgage on their house so that they could make partial payment on the purchase price of the Alameda house. Plaintiffs allege that upon those assurances they decided to enter into the deal.

On June 17 Mrs. Kelly came to plaintiffs' home with a contract drawn up for the purchase of the Alameda house for $8,500. The contract called for payment of $25 at the signing of the contract, $725 on or before June 23, $2,250 at the time of settlement on or before 120 days from the date of the contract, and the balance of $5,500 to be secured by first mortgage. Plaintiffs expected to obtain the $2,250 from the proceeds of the

sale of their house after payment of the two mortgages thereon. Accordingly they signed the contract, paid $25 to defendant, and signed a listing agreement authorizing him to sell their house for $5,500. A week later plaintiffs executed the second mortgage for $750, payable October 23. The actual amount plaintiffs received from the mortgagee, after deduction of mortgage costs, was $710. They paid this sum to defendant.

In August plaintiffs, worried over the possibility that defendant might not be able to sell their house on Gay Street, signed a listing agreement authorizing defendant to resell the Alameda house. They later arranged, however, for the cancellation of the contract of purchase. On October 26 Mrs. Appel requested defendant to return the money which had been deposited as partial payments. When defendant refused to do so, plaintiffs instituted suit. The Court held that, although defendant may have used "high-pressure salesmanship" and "some artifice," he was not required to reimburse plaintiffs for the money deposited. From the judgment entered in favor of defendant plaintiffs appealed.

In order to entitle the plaintiff to recover in an action for deceit it must be shown: (1) that a representation made by the defendant was false; (2) that either its falsity was known to the defendant or the misrepresentation was made with such reckless indifference to truth as to impute knowledge to him; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff not only relied upon the misrepresentation but had the right to rely upon it with full belief in its truth, and that he would not have done the thing from which damage resulted if it had not been made; and (5) that the plaintiff suffered damage directly resulting from the misrepresentation. *Gittings v. Von Dorn*, 136 Md. 10, 109 A. 553. We accept the rule that where a vendor makes a positive representation of a fact as true, when he does not know it to be true and does not honestly believe it to be true, and thereby intentionally induces the purchaser to enter into a contract

which but for such misrepresentation he would not have entered into, the purchaser can maintain a suit for the damages sustained. *Brodsky v. Hull,* 196 Md. 509, 77 A. 2d 156. But the law is equally clear in Maryland that there can be no recovery in an action for deceit on the ground of negligent misrepresentation. *Holt v. Kolker,* 189 Md. 636, 57 A. 2d 287.

In actions for deceit we recognize a clear distinction between (1) representations of past or existing fact and (2) expressions of opinion as to what will happen in the future. Ordinarily fraud cannot be predicated upon statements which are promissory in their nature, and therefore an action for deceit will not lie for the unfulfillment of promises or the failure of future events to materialize as predicted. Failure to fulfill a promise is merely a breach of contract, which must be enforced, if at all, by an action *ex contractu. Boulden v. Stilwell,* 100 Md. 543, 552, 60 A. 609, 1 L. R. A., N. S., 258; *Knowlton v. Keenan,* 146 Mass. 86, 15 N. E. 127; *Sachs v. Blewett,* 206 Ind. 151, 185 N. E. 856, 188 N. E. 674, 91 A. L. R. 1285; *Tucker v. Owen,* 4 Cir., 94 F. 2d 49.

In this case we are called upon to weigh conflicting evidence. The Court below tried the case without the aid of a jury. When any proceeding at law has been tried upon the facts by the court without a jury, the Court of Appeals may review upon both the law and the evidence, but the judgment of the trial court will not be set aside on the evidence, unless clearly erroneous, and due regard will be given to the opportunity of the trial court to judge of the credibility of the witnesses. General Rules of Practice and Procedure, part 3, subd. 3, rule 9.

Of course, plaintiffs cannot complain of the listing of their house for sale at $5,500, even though they may now claim that it was worth no more than about $4,000. It is common knowledge that owners and agents often place an exaggerated value on property which they are trying to sell. Statements as to value of property made by an owner or agent seeking to dispose of it by sale

or exchange are generally regarded as mere commendatory statements, "dealer's talk," or "puffing," and cannot form the basis of a charge of fraud. In *Gordon v. Butler*, 105 U. S. 553, 557, 26 L. Ed. 1166, 1169, Justice Field observed: "The law does not hold one responsible for the extravagant notions he may entertain of the value of property, dependent upon its future successful exploitation, or the result of future enterprises; nor for expressing them to one acquainted with its general character and condition. How could an over-estimate in such a case be shown? Other estimates would be equally conjectural. The law does not fasten responsibility upon one for expressions of opinion as to matters in their nature contingent and uncertain. Such opinions will probably be as variant as the individuals who gave them utterance."

The case at bar gives a good illustration of this observation. An auctioneer, who was called to the stand by plaintiffs, testified that their house on Gay Street was worth no more than $4,000; but when he was asked if he knew about the sale of a house directly across the street for more than $5,500, he admitted: "Well, I don't know. * * * A lot of wild sales are made." He was followed on the stand by a real estate broker, also plaintiffs' witness, who testified that plaintiffs' house had enhanced in value "because the block is broken, going colored," and might be sold for $6,500.

Representations of value are regarded as expressions of opinion which should put the person to whom they are made upon inquiry, and if he chooses to rely upon such statements and fails to make inquiry, he cannot maintain an action for deceit. *Buschman v. Codd,* 52 Md. 202, 207. In *McAleer v. Horsey,* 35 Md. 439, 451, an action for deceit to recover loss sustained in the purchase of stock in silver mines, Judge Miller said: "It is admitted, or rather conceded, as matter of necessity, that neither the common law nor any code of human law seeks to enforce the rule of perfect morality declared by divine authority, which acknowledges as its

one principle the duty of doing to others as we would that others should do to us, and which, by consequence, absolutely excludes and prohibits all cunning and craft or astuteness practised by any one for his own exclusive benefit. And it thence follows that a certain amount of selfish cunning passes unrecognized by courts of justice, and that a man may procure to himself, in his dealings with others, some advantages to which he has no moral right, but to which he may succeed in establishing a perfect legal title. But if any one carries this too far: if by craft and selfish contrivance he inflicts an injury upon his neighbor and acquires a benefit to himself beyond a certain point, the law steps in, annuls all that he has done, or rectifies the wrong by sustaining an action for the deceit."

In the present case there is a sharp conflict of testimony. Mrs. Appel testified that defendant said to her: "I don't know why you can't get $5,500. * * * If I cannot sell your house within four months, then I might just as well go out of business." It is obvious that this assurance, while it must have been encouraging to Mrs. Appel, did not amount to a guarantee that defendant would sell the house for $5,500.

Defendant categorically denied that he ever guaranteed that he would sell the Gay Street house for $5,500. He positively declared that he had never said to Mrs. Appel that if he could not sell her house, he "might just as well go out of business." On the contrary, he swore that he told her that her house was not worth $5,500. He recalled that she asked him whether he would condition the sale of the Alameda house upon the sale of the Gay Street house, and that he answered that he would not do so under any circumstances. He then testified that he told her: "The only way I could guarantee that your house on Gay Street is going to be sold, or sold for any certain price, is for me to buy it at this point, and I am not interested. I am not a speculator. I am a broker." He further testified that he said to her: "You want to get out of the Gay Street property.

You want to buy the Alameda property or you would not be here now. You must take a calculated risk, and that is actually what I think you are doing now if you purchase the Alameda property."

We acknowledge that where one person induces another to part with his money or property by means of a promise which he makes with the intention of not performing it, he is guilty of actionable fraud. In such a case fraud is committed by false pretense and deliberate deception. There is a *prima facie* presumption of honesty and fairness in the dealings of mankind, and hence when one person makes a promise to another as an inducement for a change of position, the promisee has the right to assume that the promisor has an existing intention to fulfill his promise. The existing intention of a party at the time of contracting is a matter of fact, and may be material to the validity of the contract. *Gale v. McCullough,* 118 Md. 287, 293, 84 A. 469; *Adams v. Gillig,* 199 N. Y. 314, 92 N. E. 670, 32 L. R. A., N. S., 127; *Cerny v. Paxton & Gallagher Co.,* 78 Neb. 134, 110 N. W. 882, 10 L. R. A., N. S., 640; *Rogers v. Virginia-Carolina Chemical Co.,* 3 Cir., 149 F. 1; 23 Am. Jur., *Fraud and Deceit,* secs. 38, 106.

We are unable to say that the record in this case clearly shows that defendant was guilty of fraud in that he had no intention of trying to sell the Gay Street house. Defendant, an active realtor employing ten salesmen, put a "For Sale" sign on the house and also advertised the property for sale three times a week in the newspapers until July 24, when Mrs. Appel became worried about the deal. While defendant did not succeed in selling the house within two months, he still had two more months in which to try to sell it. But in August plaintiffs signed a listing agreement authorizing defendant to sell the Alameda house. Defendant frankly acknowledged that the could not get $5,500 for the house on Gay Street, but he maintained that plaintiffs could have sold it for at least $4,100 and still could have settled for the Alameda house, inasmuch as the first mortgage

on the Gay Street house was for only $1,000. He declared that he was perfectly confident at the time of the execution of the contract in June, 1949, that plaintiffs were safe in contracting to buy the Alameda property, because, even though they could not have sold the Gay Street house for $5,500, he could have gotten a mortgage on the Alameda house for $6,000. He emphatically stated that he honestly believed that if plaintiffs had not ordered him in August, 1949, to terminate his efforts to sell their house, he could have sold it at a reasonable price in time to settle for the house on the Alameda.

For the reasons we have given we are unable to say that the judgment entered in favor of defendant is clearly erroneous. The judgment must therefore be affirmed.

*Judgment affirmed, with costs.*