**Howard HARTMEYER**

v.

**The TRANE COMPANY**

**No. CIV.A. WMN–01–2368.**

United States District Court, D. Maryland.

June 27, 2002.

---

John Patrick Morrissey, Morrissey Brothers, Bowie, MD, for Plaintiff.

John Snowden Stanley, Jr., Semmes Bowen and Semmes PC, Baltimore, MD, for Defendant.

### *MEMORANDUM*

NICKERSON, District Judge.

Before the Court is Defendant's Motion for Summary Judgment, Paper No. 15. The motion has been fully briefed and is ripe for decision. Upon review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and the motion will be granted.

## I. BACKGROUND

This diversity action arises out of Plaintiff's unsuccessful attempt to secure a contract with the Anne Arundel County Public

Schools (AACPS) to install air conditioning units. Plaintiff owns and operates a business known as J & H Air Conditioning, which sells, installs, and maintains air conditioning equipment for commercial purposes throughout Maryland. Defendant is a manufacturer, distributor, and installer of air conditioning equipment and components. Prior to this lawsuit, Plaintiff and Defendant had done business together for several years.

The following facts are undisputed, unless otherwise noted. On or about January 22, 2001, Plaintiff was solicited to bid on an AACPS project to install air conditioning units at a middle school. On February 6, 2001, Plaintiff attended a pre-bid conference, at which he was the only potential bidder present, and obtained the specifications for the project. Later that day, Plaintiff called Defendant's Baltimore office and explained the bid to Mr. Michael Deck, the Trane sales representative assigned to Plaintiff's account, and indicated that he would like to use Trane equipment for his bid. Plaintiff also informed Mr. Deck that he had been the only bidder present at the pre-bid conference. Mr. Deck asked Plaintiff to fax over the specifications for the project, which Plaintiff did that same day.

Over the next two weeks, Plaintiff had multiple conversations with Mr. Deck, in which Plaintiff inquired when Defendant would be able to give him a proposal and price quote so that Plaintiff could prepare his bid. Mr. Deck indicated that it was

Trane's understanding that only manufacturers were permitted to bid on the project, and therefore that Defendant would not provide Plaintiff with a price quote because Plaintiff was not eligible to bid.[1] To clear up any confusion, Plaintiff contacted the County Project Coordinator, Mr. Benjamin Hall, who clarified that the project was not limited to bids by manufacturers. Plaintiff, and perhaps Mr. Hall, informed Defendant of this information.

On February 19, 2001, Defendant faxed to Plaintiff a proposal, which included specifications of the product requested by Plaintiff and a notation at the bottom of the facsimile indicating that pricing information would follow.[2] Plaintiff did not seek price quotes from any other vendors at that time. On or about February 26, 2001, just days before the project bids were due, Plaintiff again spoke with Defendant to request the price quote.[3] Mr. Deck informed Plaintiff that another Trane employee, Mr. Roetering, was now handling the matter, and that no price quote would be provided to Plaintiff. Mr. Roetering reiterated to Plaintiff that Trane would not provide a price quote, and that Trane intended to bid on the project itself.[4]

Soon thereafter, Plaintiff contacted Carrier, another manufacturer, to request pricing information for Carrier's equipment, which he received. Plaintiff then submitted a bid on the AACPS project, using Carrier's pricing information. De-

---

1. Defendant has submitted uncontroverted evidence that Matthew Grice, a consultant with James Posey Associates, had informed Defendant that only manufacturers were eligible to bid on the AACPS project.

2. The notation reads, in its entirety: "$ To Follow."

3. There is some dispute as to the precise date of the conversation, and who initiated the phone call.

4. According to Defendant, Trane's Timonium office had been contacted in early December, 2000, about the AACPS project. Trane assisted in designing portions of the project, and was invited to bid on a portion of the project. *See,* Roetering Depo. at 12. Mr. Deck testifies that he had been unaware of Trane's involvement in a direct bid when he sent the proposal to Plaintiff in February, 2001; Plaintiff has not controverted that testimony.

fendant submitted its own bid on the project, and won the contract with AACPS.

Plaintiff filed suit in state court, asserting claims of intentional misrepresentation (Count I), fraud (Count II), negligent misrepresentation (Count III), and tortious interference with "business relations and prospective business relations" (Count IV). Defendant removed to this Court, and now moves for summary judgment as to all counts.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the evidence before the court, consisting of the pleadings, depositions, answers to interrogatories, and admissions of record, establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rule 56 mandates the entry of summary judgment against a party who, after reasonable time for discovery and upon motion, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. Furthermore, the mere existence of some factual dispute is insufficient to defeat a motion for summary judgment; there must be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In deciding a summary judgment motion, the court must view the facts in a light most favorable to the non-moving party, see *Peck v. Baltimore County*, 286 Md. 368, 410 A.2d 7 (1979), and must draw all reasonable inferences in favor of that party. See, *Hill v. Lewis*, 21 Md.App. 121, 318 A.2d 850 (1974). The non-moving party, however, may not create a genuine issue of material fact through mere speculation, or by building one inference upon another. *See, Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

## III. DISCUSSION

An element common to the torts of intentional misrepresentation, fraud, and negligent misrepresentation, is that the plaintiff must have reasonably or justifiably relied upon the defendant's allegedly false statements. *See, Appel v. Hupfield*, 198 Md. 374, 378, 84 A.2d 94 (1951) (intentional misrepresentation); *Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 665 A.2d 1038 (1995) (fraudulent misrepresentation); *Martens Chevrolet, Inc., v. Seney*, 292 Md. 328, 439 A.2d 534 (1982) (negligent misrepresentation). In the present case, Plaintiff argues that he reasonably relied, to his detriment, on Defendant's representation that it would send him price information prior to the due date for bids on the project. Defendant contends that Plaintiff's reliance was neither reasonable nor justified. The Court, while viewing the evidence in a light most favorable to Plaintiff, nevertheless agrees.

Plaintiff himself concedes that he was told by Trane employees, on multiple occasions prior to the bid due date, that Trane would not provide him with a price quote. Plaintiff received the first warning that something was amiss in his conversations with Mr. Deck between February 6 and February 19, 2001. On or about February 26, Plaintiff was told by both Mr. Deck and Mr. Roetering that no price quote would be provided. Tellingly, Plaintiff's own deposition reveals another reason, independent of any reliance on Defendant's indication that a price quote would be forthcoming, for Plaintiff's delay in seeking out another manufacturer:

[I]f I make one phone call to Trane, Carrier, York, they would have—I have seen times when I have made phone calls and then in 45 minutes one of their salesmen will pull up to the door, get out of his car and go in because they take phone messages, they say there's a job happening at so and so and it's in-house. They work on commission, they're aggressive and they're supposed to be aggressive. But I was afraid that if I called too many people the cat would be out of the bag and everybody in Washington and Baltimore would be there to bid the next morning.

Hartmeyer Depo. at 54.

■ Having conceded that he knew that Trane did not intend to provide a price quote, and that he had his own commercial motivations for delaying and limiting his search for other price quotes, Plaintiff's evidence of reasonable or justifiable reliance stands on shaky ground. Furthermore, had Defendant provided Plaintiff with a price quote, Defendant would have had no obligation to follow through on it and enter an agreement. It is established law that pricing information, provided by a seller to a contractor for the purpose of aiding the contractor in making a bid estimate, does not further obligate the seller to actually comply with any subsequent purchase order, nor to communicate the withdrawal of the price quote to that contractor. *See, Dyno Construction Co. v. McWane,* 198 F.3d 567, 573 (6th Cir.1999); *Maryland Supreme Corp. v. Blake Co.,* 279 Md. 531, 369 A.2d 1017 (1977). A price quote is merely an invitation for an offer. *Audio Visual Assocs. v. Sharp Electronics Corp.,* 210 F.3d 254, 259 (4th Cir.2000). Plaintiff has not shown why his reliance on a "forthcoming" price quote was reasonable, when he could not have relied on an actual price quote, had one been provided.

■ As he has failed to produce competent evidence on an essential element of intentional misrepresentation, fraud, and negligent misrepresentation, Defendant is entitled to summary judgment on those claims.[5]

■ Plaintiff's fourth and final claim also cannot survive summary judgment. In his complaint, Plaintiff alleges that Defendant committed "tortious interference with business relations and prospective business relations" by denying him a price quote and securing the AACPS contract for itself. Plaintiff subsequently conceded that he never actually entered into a contract with AACPS, see Pl.'s Opp. at 13, and now argues that only his prospective business relations with AACPS were infringed by Defendant. To prevail on such a claim, a plaintiff must show: (1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants; and (4) actual damage and loss resulting. *See, Audio Visual,* 210 F.3d at 261 (*citing Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc.,* 336 Md. 635, 650 A.2d 260 (1994)).

The most glaring deficiency in Plaintiff's evidence to support this claim appears in the lack of proof of unlawful purpose by

---

**5.** The Court also notes that it is highly questionable whether Plaintiff has presented a genuine issue of material fact as to other elements of these claims. To name just one example, the record is practically devoid of any evidence of fraudulent intent or malice (required for Plaintiff to recover the punitive damages he seeks) by any Trane employee. Indeed, Plaintiff's claim that Defendant knew the notation "$ To Follow" was false, appears to be based almost solely on speculation. See, Def.'s Mot. for Summ. J. at Exh. 7 (Plaintiff's Answer to Interrog. 3).

Defendant. Indeed, the only apparent purpose for Defendant's actions was to secure the AACPS contract for itself. Plaintiff shows no basis for finding Defendant's pursuit of commercial advantage unlawful. Certainly, Defendant's acts, while perhaps not a shining example of fair play, do not constitute the types of "unlawful purpose" identified in the case law, including " 'violence or intimidation, defamation, injurious falsehood or other fraud, violation of the criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith.' " *Audio Visual,* 210 F.3d at 261 (*quoting K & K Management, Inc. v. Lee,* 316 Md. 137, 166, 557 A.2d 965 (1989)). *See also, id.* (dismissing a claim for tortious interference with prospective economic advantage, where defendant had made false statements to plaintiff and had offered to provide third party with products that plaintiff had intended to provide).

In sum, when considered in the light most favorable to Plaintiff, the evidence in this case reveals Plaintiff's understandable frustrations and dashed expectations in a highly competitive field where trust and openness are hard to come by. What the evidence does not demonstrate, however, is that a reasonable jury could find Defendant liable for any of Plaintiff's claims. Accordingly, summary judgment will be entered in favor of Defendant on all counts.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment will be granted. A separate order will issue.

### ORDER

Pursuant to the foregoing memorandum, and for the reasons stated therein, IT IS this      day of June, 2002, by the United States District Court for the District of Maryland, ORDERED:

1. That Defendants' Motion for Summary Judgment (Paper No. 15) is hereby GRANTED;

2. That this case is hereby CLOSED;

3. That any and all prior rulings made by this Court disposing of any claims against any parties are incorporated by reference herein and this order shall be deemed to be a final judgment within the meaning of Fed.R.Civ.P. 58;

4. That the Clerk of the Court shall mail or transmit copies of the foregoing memorandum and this order to all counsel of record.