**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1431**

FLEUR S. BRESLER, as the Co-Personal Representative of the Estate of Charles
S. Bresler; SIDNEY BRESLER, Individually and as Co-Personal Representative
of the Estate of Charles S. Bresler,

        Plaintiffs – Appellants,

    v.

WILMINGTON TRUST COMPANY; WILMINGTON BROKERAGE
SERVICES COMPANY, a/k/a Wilmington Trust Brokerage; RALPH
WILECZEK; MATTHEW WASCHULL,

        Defendants – Appellees.

Appeal from the United States District Court for the District of Maryland, at Greenbelt.
Peter J. Messitte, Senior District Judge. (8:15-cv-01557-PJM)

Argued: January 30, 2019                    Decided: February 19, 2019

Before WILKINSON, WYNN, and HARRIS, Circuit Judges.

Affirmed by unpublished opinion. Judge Wilkinson wrote the opinion, in which Judge
Wynn and Judge Harris joined.

**ARGUED:** Philip M. Musolino, MUSOLINO & DESSEL PLLC, Washington, D.C., for
Appellants. James Lindsay Shea, VENABLE, LLP, Baltimore, Maryland, for Appellees.
**ON BRIEF:** Mitchell Y. Mirviss, Susan R. Schipper, VENABLE LLP, Baltimore,

Maryland, for Appellees Wilmington Trust Company and Wilmington Brokerage Services Company; Stavroula E. Lambrakopoulos, K&L GATES LLP, Washington, D.C., for Appellees Wilmington Trust Company, Wilmington Brokerage Services Company, and Matthew Waschull; William H. Tobolsky, HELMER, CONLEY & KASSELMAN, P.A., Willingboro, New Jersey, for Appellee Ralph Wileczek.

---

Unpublished opinions are not binding precedent in this circuit.

WILKINSON, Circuit Judge:

Appellants in this case, having prevailed on their contract claims below, now seek to advance tort claims that were brought concurrently and are based on the same wrongful conduct by the appellees. But because appellants fail to identify any injury other than that already remedied by the contract action, the instant appeal cannot succeed. For the reasons that follow, therefore, the judgment of the district court is affirmed.

I.

In January 2004, Charlie Bresler and the Wilmington Trust Company entered into a contract. Briefly, the terms of the contract were as follows: Charlie Bresler would establish an Irrevocable Life Insurance Trust with Wilmington, which would then acquire life insurance policies for Charlie and his wife; Wilmington would lend the trust $5.5 million each year, an amount more than sufficient to cover the premiums on the insurance policies, with the excess being invested and put toward increasing the eventual death benefit; finally, Charlie would make a one time pledge of collateral to cover these loans. *Bresler v. Wilmington Trust Company*, 855 F.3d 178, 184-86 (4th Cir. 2017).

The dispute in this case stems from that final term. Charlie, and his son and wife who continued the suit after his death in the name of his Estate, maintained that the contract only required a single pledge of collateral. When Wilmington asked the Breslers to make yearly, on-going, collateral payments, they refused and eventually sued, advancing theories of liability sounding in tort—primarily fraud and breach of fiduciary duty—and contract.

3

The district court decided to bifurcate the Breslers' claims and deal with the contract claims first, leaving the tort claims to be dealt with later. In proposing bifurcation to the litigants, the court told them that proceeding to trial on the contract claims alone could "expedite[]" matters and provide a "fast trial." J.A. 484. The court also discussed the possibility that the tort claims would "confuse[] this case." *Id.* The court was also seemingly concerned at the possibility of a double recovery should the claims be tried together. *Id.* After all, in the words of the court, "This is a breach of contract case. That's really what it's all about." J.A. 483.

The court also warned the litigants that the resolution of the contract claims could lead to the dismissal of the tort claims: "This is a breach of contract case and everything, or virtually everything else in my view stands or falls on what the contract was." J.A. 483-82. The idea that the Breslers would be able to show separate damages from the contract claims and the tort claims was, in the words of the district court, "pie in the sky." J.A. 484. Nevertheless, the court did not conclusively state that a trial on the contract claims would also resolve the tort claims, instead telling the litigants that "we'll see what else then develops." J.A. 485. Despite this uncertainty, the Breslers did not oppose bifurcation and proceeded to trial on the contract claims alone, with the understanding that the tort claims would be disposed of at a later date. J.A. 1043; Br. for Appellants at 36-37 ("Appellants, however, do not quarrel with either the decision to bifurcate, or the decision to sever[.]").

At the trial, the jury found that the contract only required a single collateral payment. The jury awarded the Breslers $23,361,692 in damages. J.A. 1017.

4

Additionally, the court ordered Wilmington to return $4,912,561.79 to the Breslers, for a total monetary award of $28,274,253.79. *Id.* Finally, the court ordered Wilmington to continue performing its side of the bargain without on-going collateral payments. *Id.* We affirmed the judgment. *Bresler v. Wilmington Trust Company*, 855 F.3d 178, 189, n. 20, 202 (4th Cir. 2017).

After obtaining this favorable judgment in the contract action, the Breslers returned to court to press their tort claims. But the district court granted Wilmington's motion for summary judgment on the grounds that the Breslers had been made whole by the earlier judgment and were therefore barred from pressing their tort claims by "the acceptance of benefits doctrine or the doctrine of judicial estoppel." J.A. 1048. The Breslers were also pressing tort claims against two Wilmington employees who were involved in the negotiation and execution of the contract at issue. The court granted summary judgment on these claims on the ground that they were barred by the statute of limitations. J.A. 1037. Finally, Charlie Bresler's son was advancing tort claims in his individual capacity. The court granted summary judgment on these claims on the grounds that, after the contract judgment, the son suffered no damages and that his claims were barred by the statute of limitations. J.A. 1032. The Breslers appealed.

## II.

This case helps illustrate a straightforward axiom of commercial law: a breach of contract is not *ipso facto* a tort. Injuries that result from a breach of contract are remedied by an action in contract law; injuries that result from tortious conduct are remedied by an

action in tort. No amount of artful pleading should allow a plaintiff to obtain a double recovery in tort and contract for the same injury.

This principle finds expression in Delaware's "anti-bootstrapping" rule. Under Delaware law[*] a party cannot "'bootstrap' a claim of breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform its obligations." *Narrowstep, Inc. v. Onstream Media Corp.*, 2010 WL 5422405 (Del. Ch. 2010) at *15 (quoting *Iotex Commc'ns, Inc. v. Defries*, 1998 WL 914265, at *4 (Del. Ch. Dec. 21, 1998)). Nor can a party disguise a claim for breach of contract as a claim for tortious breach of fiduciary duty since the "contract duties" "supersede[] and negate[] any distinct fiduciary duties arising out of the same conduct that constituted the contractual breach." *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010). Rather, in order to prevail on a tort claim that is brought alongside a contract claim, a party must show that it has suffered some injury over and above that caused by the breach of contract. *See*, *e.g.*, *Ridley v. Bayhealth Med. Ctr., Inc.*, No. N17C-04-306-JRJ, 2018 WL 1567609, at *6

---

[*] Delaware law governs the issue. The parties agree that Delaware law governs substantive issues. Br. for Appellants at n.6; Br. for Appellee at 17-18. Appellants, however, try to treat Delaware's anti-bootstrapping rule as procedural. Br. for Appellants at 45. We think that the better view is that the rule is a substantive command of state law, *see Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 428-29 (1996), which the district court was correct to apply while sitting in diversity, *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013). In any event, the law of Maryland, which appellants preferred, provides them no refuge: Maryland law mirrors the substance of Delaware's anti-bootstrapping rule. *Hale Trucks of Maryland, LLC v. Volvo Trucks North America, Inc.*, 224 F. Supp. 2d 1010, 1031-32 (D. Md. 2002); *Appel v. Hupfield*, 84 A.2d 94, 96 (Md. 1951).

(Del. Super. Ct. Mar. 20, 2018); *Cornell Glasgow, LLC v. La Grange Props., LLC*, 2012 WL 2106945 (Del. Super. Ct. June 6, 2012) at \*8. The same, indivisible injury cannot support simultaneous tort and contract recoveries.

The principal case relied on by the appellants demonstrates the operation of this rule. In *Narrowstep v. Onstream Media Corporation*, plaintiffs brought concurrent contract and fraud claims in Delaware's Court of Chancery. 2010 WL 5422405 (Del. Ch. 2010). Onstream had entered into a contract with Narrowstep as a preliminary step towards a merger of the two companies. But rather than faithfully execute the contract, Onstream allegedly used the leverage the contract granted it to "strip Narrowstep of its valuable assets with no intention of closing the merger." *Id.* at \*15. The Chancellor explained the operation of Delaware's anti-bootstrapping rule but held that it did not apply since Narrowstep suffered distinct injuries from Onstream's alleged breach of contract *and* from the "repeated[] lie[s]" Onstream told Narrowstep as part of its "broader scheme to loot Narrowstep." *Id*. *Narrowstep* is an application of Delaware's rule that contract claims and tort claims must respond to distinct injuries, not an exception to it.

This rule of Delaware law serves to defeat appellants' claims. The Breslers argued at trial that they had suffered an injury as a result of Wilmington's breach of contract. This injury was remedied by an award of $28 million and an order that Wilmington live up to its end of the bargain. Now the Breslers have returned to court to press their tort claims, alleging that Wilmington and its employees deliberately misled Charlie Bresler by telling him that only a one-time collateral payment would be required when, in reality, they always intended to solicit on-going payments. The Breslers allege as well that

7

Wilmington and its employees had a fiduciary relationship to Charlie and his son, which they breached.

We need not reach the veracity of these allegations because the tort claims are premised entirely on the failure to live up to a contractual promise: Wilmington's promise to continue paying into the Breslers' trust even without continuing collateral payments in return. The Breslers do not allege that tortious misconduct on the part of Wilmington, or its employees, caused them any injury beyond that already remedied in the contract action. Instead of a separate injury, the Breslers argue that proceeding in tort would allow them to obtain separate remedies that were not available in the contract action: punitive damages, treble damages, and attorneys' fees. But the Breslers' inability to seek these remedies in the earlier action is not an "injury"; an aggrieved party's desire for extra-contractual remedies is not sufficient to sustain a tort claim in the absence of an extra-contractual injury. Bootstrapped tort claims seeking "exemplary damages" and "extra-contractual attorneys' fees" are "nothing more than an effort to 'pile on' diaphanous claims of misbehavior on top of contractual breach claims that alone are adequate to redress the 'wrong' that allegedly has been committed." *Cornell Glasgow, LLC v. La Grange Props., LLC*, 2012 WL 2106945 (Del. Super. Ct. June 6, 2012) at *1.

The Breslers made a tactical decision when they declined to object to the district court's decision to bifurcate their tort and contract claims and proceed to trial on the latter. The division yielded the appellants tactical benefits: a faster trial, a more straightforward theory of liability, the possibility of a second trial had the contract action not gone their way, etc. But it came with risks too. The district court made the Breslers

8

aware of the possibility that nothing would remain of their tort claims once the contract claims were satisfied. *See supra* Part I; *see, e.g.*, J.A. 487 ("[I]t seems to me by deciding [the contract issue] first, pretty much everything else resolves"). That is indeed what has come to pass.

## III.

The Breslers' successful action in contract has made them whole. They are entitled to no less—and to no more.

For the foregoing reasons the judgment of the district court is

*AFFIRMED.*